620 A.2d 979

**OWENS–CORNING FIBERGLAS CORPORATION, et al.**

v.

**FIBREBOARD CORPORATION.**

**No. 1072, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

March 1, 1993.

Donald S. Meringer (Miles & Stockbridge on the brief), Baltimore, for appellant, Owens–Corning.

B. Ford Davis (Whiteford, Taylor & Preston on the brief), Baltimore, for appellant, Keene Corp.

John B. Isbister (Joan F. Brault, Tydings & Rosenberg, Baltimore, James L. Miller, Meredith N. Landy and Brobeck, Phleger & Harrison, San Francisco, CA, on the brief), for appellee.

Argued before ROSALYN B. BELL, WENNER and HARRELL, JJ.

ROSALYN B. BELL, Judge.

This appeal arises from the consolidated asbestos personal injury litigation pending in the Circuit Court for Baltimore City. The consolidation involves about 8,550 asbestos cases that were either filed in Baltimore City or transferred

from the various circuit courts in Maryland to Baltimore City pursuant to Rule 2–327.[1]

Appellee, Fibreboard Corporation, was one of approximately 100 former manufacturers and distributors of products containing asbestos named as defendants in some of the cases. Appellants, Owens–Corning Fiberglas Corporation (Owens–Corning) and Keene Corporation (Keene), were also named as defendants in some of the cases. The gravamen of the complaints filed is basically the same—that the complainants contracted asbestos-related illnesses as a result of their exposure to products containing asbestos manufactured or installed by the various defendants and that the defendants are liable in tort for those alleged injuries. All defendants were "deemed" by various court orders to have asserted cross-claims for contribution against all other defendants.

Following two mistrials in 1991, the consolidated proceeding involving the defendants which were remaining in the case commenced with jury selection on February 18, 1992. After two weeks of voir dire, Fibreboard settled its dispute with the plaintiffs. At that point, Fibreboard remained a party to the trial of the common issues because of the cross-claims for contribution asserted against it by the remaining defendants. At that time, the trial judge asked the defendants to advise him if they intended to pursue their cross-claims against Fibreboard.[2] Owens–Corning and Keene stated that they intended to pursue their cross-claims against Fibreboard. The next day, however, both moved for a voluntary dismissal without prejudice. After denying their motion, the judge told Owens–Corning and Keene that they needed to dismiss their claims with prejudice. When Owens–Corning and Keene refused, the court *sua sponte*

---

**1.** Rule 2–327 governs the transfer of actions from one court to another.

**2.** So far as we can tell, the judge was asking the parties whether they were going to proceed in the March trial, since we cannot find any evidence that there was another trial scheduled for the cross-claims.

dismissed their cross-claims and allowed Fibreboard to be dismissed from the case. The judgment was entered on May 4, 1992. Owens–Corning and Keene have appealed, contending:

— "the circuit court erred in dismissing with prejudice the 8,550 claims for contribution where they offered to either dismiss the claims without prejudice or proceed to try them immediately";

— voluntary dismissal under Rule 2–506 requires the dismissal truly be voluntary by the party asserting the claim;

— Rule 2–506(b) does not give the trial court discretionary power to dismiss a claim with prejudice; and

— Fibreboard's interpretation of Rule 2–506 violates Owens–Corning's and Keene's rights to due process and trial by jury.

Finding no error, we affirm and explain. Since appellants' last three contentions are really subparts of the first, we will deal with all of appellants' contentions together.

## VOLUNTARY DISMISSAL PURSUANT TO RULE 2–506

According to appellants, "the issue presented here is whether the Maryland 'Voluntary Dismissal' rule, Rule 2–506, empowered the trial court to dismiss with prejudice, on its own initiative, their cross-claims for contribution against a co-defendant that settled for consideration the 8,550 cases that comprise the underlying consolidated action." Appellants contend that the Rule does not give the trial court the discretion to dismiss involuntarily their cross-claims for contribution. They argue that such an interpretation would run afoul of Articles 20 and 23 of the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Appellants argue that this is especially true in light of the fact that they had clearly expressed their intention to proceed with their cross-claims. We disagree both with their factual predicate and their view of the trial court's authority.

Rule 2–506, which governs voluntary dismissal, provides in its entirety:

"(a) **By Notice of Dismissal or Stipulation.**—Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

"(b) **By Order of Court.**—Except as provided in section (a) of this Rule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

"(c) **Effect.**—Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

"(d) **Costs.**—Unless otherwise provided by stipulation or order of court, the dismissing party is responsible for all costs of the action or the part dismissed.

"(e) **Dismissal of Counterclaims, Cross-claims, or Third-party Claims.**—The provisions of this Rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim, except that a notice of dismissal filed by a claimant pursuant to section (a) of this Rule shall be filed before the filing of an answer."

Sections (a) and (b) of the Rule are patterned after F.R.Civ.P. 41(a)(1) and 41(a)(2), respectively. Under Rule 41(a)(2) and Rule 2–506, the granting of a motion for voluntary dismissal is within the court's discretion, after

weighing the equities and giving due regard to all pertinent factors. This discretion will not be overturned absent a showing of an abuse of that discretion. *See* 5 *Moore's Federal Practice*, ¶ 41.05. A motion for voluntary dismissal may be granted with or without prejudice, a decision that is discretionary with the court. *See* 5 *Moore's Federal Practice, supra*, ¶ 41.05[1]. This may be done, either on a motion or *sua sponte*, "to manage [the court's] affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

■ Appellants argue that the trial judge improperly converted their voluntary motion to dismiss without prejudice into an involuntary motion to dismiss with prejudice. Even assuming arguendo that this "conversion" had taken place, such action would, as a matter of policy, be appropriate in the context of this case. Rule 2–506(b) plainly states that, absent a request to dismiss prior to the filing of an answer or summary judgment motion or a stipulation of the parties, "a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper."

Prior to the enactment of the present Rule, a plaintiff could unilaterally dismiss its action at any time prior to the introduction of evidence at trial. The old Rule was changed because it gave

> "the plaintiff control over the court's trial docket and over the judge and jury before whom the case was to be tried. If the plaintiff was dissatisfied with the appearance of the jury panel or with the judge to whom the case was assigned, he simply filed a notice of dismissal without prejudice. The lawsuit would be filed again shortly thereafter, commencing the case once again from the beginning. This obviously operated to the prejudice of the parties and the court."

P. Niemeyer and L. Schuett, *Maryland Rules Commentary* 351 (2nd ed.1992).

In the instant case, the jury had been selected, pretrial and evidentiary rulings had been made, the plaintiffs and non-settling defendants had presented their opening statements, and the opening statements of cross-claim defendants Fibreboard and Owens–Illinois were about to begin. Owens–Corning and Keene had not made their opening statements at this point. To allow Owens–Corning and Keene to dismiss their cross-claims against Fibreboard without prejudice at this point in the litigation would allow the type of delay, repetitious filing and forum shopping that Rule 2–506 seeks to remedy. It is impossible to understand the trial judge's ruling, however, without placing the events in some type of chronological order.

—March 9, 1992—

On March 9, 1992, one of the defendants, Pittsburgh Corning, requested the release of the terms of a settlement that had been negotiated between Fibreboard and the plaintiffs. Since the settlement had not been reduced to writing, the judge deemed the request to be "premature." The colloquy went as follows:

"THE COURT: Let me continue with some of these other motions and then I will come back to the problem ones.

"Pittsburgh Corning motion for production of settlement agreements and/or releases is denied. It is premature.

"[COUNSEL FOR PITTSBURGH CORNING]: Your Honor, may I address the premature nature of your ruling or the nature of your ruling that it is premature?

"THE COURT: Briefly. Go ahead, sir.

"[COUNSEL FOR PITTSBURGH CORNING]: Your Honor has asked us to state positions on the record with respect to our cross claims as to each other and as to those individuals who have settled their cases with plaintiffs. As to [Owens Illinois] and Fibreboard Corporation, for us to know what our options are and what our realistic and real options are with respect to how and

under what circumstances we pursue those cross claims, we need the information we have requested in that motion. It is not premature as to now settled defendants. It is in fact ripe at this point in time and we would urge your Honor to reconsider within that parameter at this point.

"THE COURT: Let me hear from—

"[COUNSEL FOR OWENS-CORNING]: Your Honor, may I add to that? At your request I consulted with my client with respect to waiving cross claims with respect to Fibreboard and [Owens Illinois]. I was unable to obtain authorization to do that and was instructed instead to urge this court to disclose the terms and amounts of those settlement agreements so that my client can make an intelligent decision as to whether to be satisfied with the pro tonto [sic] setoff in order to pursue whatever additional amount there will be on pro rata cross claim. We simply cannot make the intelligent decision at this time without the information Pittsburgh Corning is asking for at this time.

"THE COURT: I understand. Let me hear from [Plaintiffs' attorney] or whoever.

"[COUNSEL FOR PLAINTIFFS]: Your Honor, as a practical point, the settlement agreements have been reduced to correspondence, but not agreements. There are no documents to be produced and no releases that have been executed by anyone or have been provided. There are no releases in existence as it relates to [Owens Illinois] and Fibreboard. As to the Fibreboard agreement, it is an agreement between Mr. Snyder [3] and the plaintiffs, and we are in the process of reducing it to writing. It is based on some representations that Mr. Snyder and I have made personally.

---

**3.** We assume that Mr. Snyder represents Fibreboard in some capacity, although we have not been told definitively. This fact, however, is not material to our decision.

"As to [Owens Illinois], there is a document that we are in the process of drafting up and finalizing on terms. There are no settlement agreements as such that could be produced even if we wanted to.

"THE COURT: [Counsel for Plaintiffs].

"[COUNSEL FOR PLAINTIFFS]: Thank you, your Honor. Furthermore, your Honor, as we indicated in our reply to the defendants' request for this information and I believe your Honor has ruled previously, until such time as the defendants have been, one, found liable to the plaintiffs, to discharge payments by the common liability or pay more than their pro rata share and at such time as the other defendants or the nonpresent defendants, settling defendants have been found to be joint tort-feasors, they are not entitled to the information.

"THE COURT: That is why I said premature, but they have asserted their ground which is that they need that in order to make an intelligent decision as to whether they are going to pursue cross claims.

"I am maintaining my ruling at the present time. There is nothing to produce.

"[COUNSEL FOR PITTSBURGH CORNING]: Your Honor, with respect to the dollar amounts, we still need to know the type or form of release which is encompassed in this settlement agreement. If plaintiffs want to submit under seal to court prior to the case going out for jury consideration the dollar amounts in each case, which I understand has been the practice in Maryland, that is understandable, and we would abide by what, as I understand, has been the traditional Maryland practice here.

"THE COURT: How does that help you?

"[COUNSEL FOR PITTSBURGH CORNING]: If I find out the nature of the release involved, your Honor, it tells me—

"THE COURT: Oh, I know about the nature of the release, but—

"[COUNSEL FOR PITTSBURGH CORNING]: Yes, your Honor.... It keeps plaintiffs who may have an overall settlement agreement from doing anything after the fact of a jury verdict being returned to move money around so as to get an optimum advantage under a settlement.

"Quite frankly, your Honor, I have been burned by that in other jurisdictions where there is a general settlement agreement and the plaintiffs weren't required to state to the Court in writing what the dollar amounts for each of the cases were until after the jury had come back, so that they could then later decide how to move money around best.

"We would request the jury know or that the court have submitted under seal what the settlements amounts are in each case prior to the verdict being returned by the jury.

"THE COURT: This court maintains—yes, sir. If you have got a brand new point, I am listening.

"[COUNSEL FOR OWENS–CORNING]: I believe it is new inasmuch as your Honor has indicated or ruled that there is nothing to produce. If there is nothing to produce, there is no settlement. I have heard nothing from plaintiffs or [Owens Illinois] that indicates that there has been a meeting of the minds or consummation of the claim, and it is my position and the position on behalf of my client that plaintiffs and Fibreboard and Owens Illinois have not settled, that Owens Illinois and Fibreboard are all defendants in this case and have to defend themselves until such time as there is a meeting of the minds and that there has been a settlement agreement reached.

"THE COURT: Well, counsel, counsel for the plaintiffs and counsel for the respective defendants, [Owens Illinois] and Fibreboard, have both stood up and said there is an agreement. Now, the agreement may take the form of a bilateral writing back and forth of letters until there

is a binding agreement, so I am going to take it on faith. If there is anything that shakes my faith, I will make them produce what they have, not for the benefit of the defendants necessarily, but to assure myself that there is an agreement. I do assume that there is an agreement.

"I maintain my ruling."

The colloquy between the parties and the court then continued:

"THE COURT: Okay. On an unrelated topic, I have reconsidered my decision with regard to Fibreboard's motion to have the adjudication of the cross claim later on in the master cross claims trial and have concluded that it is up to the individual cross defendant, so if Fibreboard wants to have it later on,[4] that is fine with me, and if [Owens–Illinois] does not want to have it, then it is going to be adjudicated in the instant case, and I hope I will be faced with that decision many, many more times in the future.

$$* \quad * \quad * \quad * \quad * \quad *$$

"[COUNSEL FOR OWENS–CORNING]: Your Honor, I rise only on the point of whether or not the dismissal of the cross claim of a co-defendant would be with prejudice at this time and suggest to the Court for the same reasons that the order you signed today would have resulted in dismissal without prejudice of those cross defendants who are dismissed by the other order that you signed if the notice procedure isn't filed within the appropriate time that I would suggest that the purpose behind the ruling is to clear the Court's dockets of claims until such time as the parties decide whether or not they really want to pursue them, it would be a more logical course to

---

**4.** The judge's statement indicates that Fibreboard had asked for a separate proceeding for the cross-claims. As will appear later, however, on March 10, Fibreboard elected to proceed with the cross-claims trial in March, rather than delay it until September.

have a dismissal without prejudice under those circumstances.

"Certainly there is no question here that a cross plaintiff will be receiving any consideration for giving up the cross claim at this time. That is the only thing I suggest, your Honor.

"[COUNSEL FOR FIBREBOARD]: Your Honor, in response to that, as I understand Maryland practice and distinguished counsel will correct me if I am wrong, the Court has framed these cross claims for trial now and they may not be dismissed or abandoned without an express order of the Court, and failure to go forward with those cross claims would in the ordinary course result in entry of judgment for the cross claim defendant, so I believe that the Court has framed the issue so that the cross claim Plaintiffs really do have to elect.whether they are going to go forward or not, and failure to go forward at this point I think must necessarily, because we are trying these issues, result in a judgment to the cross claim defendants, so that is why I wanted to clarify that it would be the Court's thinking that any refusal to go forward now will result in dismissal with prejudice because these cross claims cannot be abandoned by these cross claim Plaintiffs without approval of the Court at this point, as I understand Maryland law.

\*      \*      \*      \*      \*      \*

"[THE COURT]: Well, let me suggest this, folks: I have heard what you both have said and I have paid attention to what I have heard.

"I having read [Counsel for Fibreboard's] letter dated March 9th, and I don't want to get more paper, but I think I must know in writing the position of both Fibreboard and OCF [Owens–Corning Fiberglas] at least, to say nothing of other cross Plaintiffs. I want you all to put in writing your various arguments just now, and let me have them by Friday—by Thursday at 5 p.m. because this is a very important issue."

—March 10—

On March 10, the judge reiterated the need for the litigants to tell him whether they intended to proceed with their cross-claims against Fibreboard. The following colloquy took place:

"THE COURT:

\*     \*     \*     \*     \*     \*

"I ask you this: I want to know from the Defendants in this case which of the Defendants intend to pursue cross claims against [Owens Illinois] and Fibreboard. I know that yesterday some of the Defendants, or perhaps all of them, took the position that they couldn't do so because they didn't have the benefit of seeing the settlement agreements....

"However, I have to know this information because if I don't know it, how can I possibly instruct or give remarks to the jury adequately to inform them ... that there is a settlement, and I am going to say certain things about the settlement, but I have to understand, as does the jury, whether the Defendants are indeed asserting cross claims against the Plaintiffs—against the settling Defendants.

"Now, if the Defendants do not tell this Court whether it, or they, intend to assert cross claims meaningfully against the two settling Defendants, then I take it that they have waived any cross claims against those Defendants, so I will hear from you.

"[COUNSEL FOR OWENS–CORNING]: Your Honor, on behalf of Owens Corning ..., yesterday I informed the Court that you should assume that we are pursuing the cross claims unless I am specifically authorized by my client to waive or withdraw those claims.

"I also informed the Court that without disclosure of the terms and the amounts of the settlement agreements we cannot make that decision to waive or withdraw the claims intelligently. Therefore, I have not been authorized to withdraw those claims. Owens Corning ... will

be pursuing those cross claims.[5]

\*    \*    \*    \*    \*    \*

"[COUNSEL FOR PITTSBURGH CORNING]: Quite frankly, your Honor, if I may briefly state, and I will do it briefly, much has happened with respect to the cross claim circumstances over the past two to three days. I had urged and renew my motion to sever the settled Defendants who now remain only as cross claim Defendants because of the unfair prejudice it places on my client in defending its claims in this forum and for the reasons I stated earlier when I orally urged this motion.

"[COUNSEL FOR KEENE]: Keene's position is the same as stated by [Counsel for Pittsburgh Corning].

\*    \*    \*    \*    \*    \*

"[COUNSEL FOR FIBREBOARD]: I might say, your Honor, that I certainly welcome the sentiment behind the so-called dismissals without prejudice, but as I understand the governing rule, any dismissal without prejudice would require an explicit court order. We believe, with great respect, although we do appreciate, as I say, the situation, that the dismissal of the cross claims should be with prejudice.

\*    \*    \*    \*    \*    \*    \*

"THE COURT: Do you take the position that this Court should rule that there has been a waiver of any— that there has been a waiver as to any Defendant who does not dismiss his cross claims or its cross claims with prejudice?

"[COUNSEL FOR FIBREBOARD]: Your Honor, I would not put it that way. I believe that the Court has abundant authority to require the parties to advise the Court how they intend to proceed, and I think the Court has abundant power to refuse to approve a dismissal

---

5. We acknowledge the fact that counsel for Owens–Corning stated affirmatively that he would be pursuing the cross-claims, but we also note that he never stated when he intended to do so.

without prejudice and to require instead a dismissal with prejudice.

"As your Honor knows, I have been on both horns of the waiver dilemma in my life and I don't seek any unfair advantage here with respect to the waiver documents, but if the parties are going to dismiss, it should be with prejudice at this point.

\*  \*  \*  \*  \*  \*

"[COUNSEL FOR FIBREBOARD]: I think the reason it should be resolved is that Fibreboard Corporation after considering the matter fully has decided to elect to defend the cross claims now rather than in September,[6] and we would like respectfully not to be subjected to potentially two cross claims trials. Anyone who is asserting cross claims against us is here and present and we believe they should be asserted now or not at all, so we would like not to find ourselves in two cross claims trials.

"THE COURT: Well, gentlemen, we are going to table this conference now because I have to get out, as do you, and start this trial.

"I am going to inform the jury of what I think I must inform the jury about. I am saying that if certain of the Defendant cross Plaintiffs now do not choose to assert cross claims against the two settling Defendants, then they run the risk of a waiver. I am not saying I am ruling at this moment that there is going to be a waiver, and maybe ... I don't have to cross that bridge now, but I am alerting folks to the fact that if they don't present their cross claims, they run the risk that they have waived their cross claims.

\*  \*  \*  \*  \*  \*

"[COUNSEL FOR KEENE]: I have offered to dismiss Fibreboard without prejudice. The Court can't make me dismiss it with prejudice.

---

6. It is here that Fibreboard elected to defend any cross-claims against it in the March trial; thus, we infer that no separate hearing was held after March.

"THE COURT: But I can attach consequences.

"[COUNSEL FOR KEENE]: You can say that you don't accept my offer and counsel doesn't accept and the Court doesn't accept my offer to dismiss without prejudice. If the Court does that, then I have a cross claim which I intend to pursue in this case.[7]

\* \* \* \* \* \*

"THE COURT: The Court's ruling is that you have got to tell me now that you are dismissing the case with prejudice. If you don't tell me that, I am saying you have waived your right to proceed by way of a cross claim."

Later that day, three of the cross-plaintiffs, W.R. Grace Company, A C & S and MCIC dismissed their claims against Fibreboard with prejudice. On March 11, 1992, Porter–Hayden, dismissed its claim against Fibreboard with prejudice. The judge then asked counsel for Fibreboard to prepare an order "dealing with the issue that if co-defendants, cross-plaintiffs, do not dismiss their claims with prejudice, that this court will deem that to be a waiver."

—March 12—

On March 12, 1992, the following colloquy occurred:

"[COUNSEL FOR FIBREBOARD]: Your Honor, if the Court please, we have been advised by Owens Corning ... Corporation counsel that Owens–Corning Corporation intends to dismiss its cross claims for contribution against Fibreboard Corporation. Owens–Corning ... wishes to do that without prejudice. We object to that, and in any event, we do wish to avail ourselves of the Court's earlier ruling that in these premises the Court will, for a variety of reasons which have already been specified on the record, find that the attempt to dismiss without prejudice is not well taken and we will be presenting the Court now with a final order or judgment, whichever is appropriate

---

**7.** Counsel for Keene does not, however, specify when he intended to pursue his cross-claim, or whether he was prepared to go forward at that time.

under Maryland procedure, that terminates the cross claims at this point by all of the cross claimants against Fibreboard Corporation.

"At that point obviously [Owens Corning] may believe it has remedies in reviewing courts and they will presumably pursue those remedies, but in this court pursuant to your Honor's matters cross claimants and Fibreboard Corporation would be final.

"[COUNSEL FOR OWENS CORNING]: Your Honor, Owens Corning . . . is prepared to dismiss cross claims against Fibreboard without prejudice in this case and as long as Fibreboard does not remain in this case defending itself, we will not continue to assert our cross claims against it."

This is the last portion of the transcript provided to us relevant to this issue. As stated previously, the judge signed the order dismissing the contribution cross-claims against Fibreboard Corporation on May 4, 1992. The order stated in pertinent part:

"Cross-plaintiffs Armstrong World Industires [sic], Inc., GAF Corporation, Keene Corporation, National Gypsum Company, Owens Corning Fiberglas Corporation, Pittsburgh Corning Corporation, Quigley Company, Inc., U.S. Gypsum Company, and W.R. Grace and Company advised the Court that they did not wish to assert or pursue cross-claims for contribution against Fibreboard in that trial, and each stated an intention to dismiss cross-claims against Fibreboard without prejudice. Pursuant to Maryland Rules 2–211 and 2–506, the Court declined to permit the proffered dismissal without prejudice. Owens–Illinois, Inc. took no position on the question of pursuing cross-claims against Fibreboard Corporation. These cross-plaintiffs have abandoned, relinquished and waived their contribution claims against Fibreboard."

The judge then entered a final judgment on the cross-claims of these parties and some others in favor of Fibreboard.

—Dismissal of the Cross–Claims—

Owens–Corning and Keene argue that their decision to dismiss their claims against Fibreboard without prejudice did not amount to a decision not to pursue their cross-claims and that the judge was incorrect in construing it as such. Both steadfastly maintain that they fully intended to pursue their cross-claims against Fibreboard. What the parties do not assert, however, is whether they intended to pursue their claims in the March proceeding. There is ample evidence in the record to show that what Owens–Corning and Keene really wanted to do was to proceed against Fibreboard in a separate trial after the March trial had been completed. The trial judge was in the best position to understand what the parties were asking for and make a determination based on what he heard. In light of the equivocal statements of counsel for Owens–Corning and Keene, we cannot say that the judge was clearly erroneous in concluding that they were standing on their claimed right to dismiss without prejudice or proceed at some future time on their cross-claims.

At oral argument, counsel for Owens–Corning stated that Owens–Corning would have "prefer[red] to dismiss without prejudice and pursue these cross claims in another proceeding." It is apparent that this was Owens–Corning's and Keene's first choice. This was not, however, the choice that the judge was willing to offer and by not insisting after March 10 that they wanted to try their case immediately, Owens–Corning and Keene acquiesced to the decision that was ultimately made.[8]

▉▉ One reason that Owens–Corning and Keene may have wanted to dismiss their cross-claims without prejudice

---

8. Based on the statement from counsel for Fibreboard on March 12 about perceived remedies that Owens–Corning and Keene might have from a reviewing court, we might infer that they were hoping that the judge would make the decision he did and that, after an appeal, they could try their cross-claims in a separate proceeding. If this was indeed their strategy, the risks outweigh the benefits, as is evidenced by the results in this case.

at this point in the litigation was that they did not know the terms of the settlement between Fibreboard and the plaintiffs.  In the last analysis, however, if Owens–Corning and Keene had thought that this was integral to their case, they had an obligation to raise the issue on March 12, when the judge needed to and was going to instruct the jury in this very complex case.  By not doing so, they abandoned the issue and, thus, cannot now claim that they were prejudiced by the judge's denial of the motion to disclose the terms of the settlement agreement.

Admittedly, the settlement between the plaintiffs and Fibreboard presented Owens–Corning and Keene with additional problems.  When the plaintiffs settled with Fibreboard, the burden of proving Fibreboard's liability fell on Owens–Corning and Keene.  At oral argument, counsel for Owens–Corning admitted that "if [plaintiffs] hadn't settled they would have done our job for us."  Counsel for Owens–Corning and Keene insist that, regardless of the settlement, they were ready to try their cases.  The realignment of the parties brought about by the settlement placed the burden of proving Fibreboard's liability solely on Owens–Corning and Keene.  The judge, however, had other legitimate considerations that were paramount to those of Owens–Corning and Keene.

Complex cases such as the one that gave rise to this appeal are a relatively new phenomenon.  As in this case, one judge is faced with literally thousands of plaintiffs and hundreds of defendants.  The burden falls on that judge to keep the case moving at an orderly pace without sacrificing due process rights.  At the Annual Meeting of the Conference of Chief Justices, on July 21, 1992, the State Judges Asbestos Litigation Committee presented a report entitled: "Megatorts: The Lessons of Asbestos Litigation."  The report states in part:

"Due process demands fair and equitable judicial procedures.  Realistic opportunities to present a case and rebut an adversary must be preserved.  Moreover fairness to all litigants cannot be ignored.  The courts cannot provide

ideal trials for asbestos plaintiffs at the expense of leaving other parties waiting in a long queue to receive judicial attention.... The traditional competing goal to fairness is efficiency because courts have an obligation to run economically. By streamlining pretrial processes, utilizing innovative case management and conducting expedited trials more cases can be heard and settlements achieved.

"In describing case management methods, the tension between fairness and efficiency become obvious. Some innovative judges have found ways to increase both fairness and efficiency; others have had to make tradeoffs. However, all judges have learned to increase their abilities to accommodate both goals."

In the instant case, the trial judge was ready to proceed with the trial, the jury had been empaneled and sworn, and some of the parties had given their opening statements. The judge, wanting to move the case forward, offered Owens–Corning and Keene a choice of dismissing their cross-claims with prejudice or going forward with their cross-claims at trial. This was not the choice they wanted, but the trial judge made it clear that this was what was available to them. When they continued to balk, the trial judge merely did what he told them he would do, namely, grant their motion to dismiss, but with the condition of prejudice. We cannot say that he abused the discretion given to him by the Rules.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.