891 A.2d 416

**John SKEVOFILAX, Individually, etc. et al.**

v.

**AVENTIS PASTEUR, INC. et al.**

**No. 2526, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Feb. 1, 2006.

Paul W. Spence of Towson, George G. Tankard, III on the brief of Columbia, for appellant.

Stephen E. Marshall of Baltimore (Ave Lias–Booker, Paul F. Strain, Dino S. Sangiamo on the brief) Baltimore (Deborah M. Russell on the brief) of richmond, VA (Winston D. Carter, Jr. on the brief) of Houston, TX. (D' Ana E. Johnson, Carolyn I Stein, Carlos .E. Provencio, Raymond G. Mullady, Jr., Kenneth Y. Turnbull on the brief) of Washington, DC, (Marie S. Woodbury on the brief) of Kansas City, MO. (Daniel J. Thomasch, Richard W. Mark on the brief) New York, NY, for appellee.

Panel: ADKINS, BARBERA, WOODWARD, JJ.

WOODWARD, J.

In April 2003, appellants, Helen and John Skevofilax, individually and on behalf of their son, Michael Skevofilax, a minor, filed suit in the Circuit Court for Baltimore City against appellees, several defendants involved in the manufacture of pediatric vaccines or ingredients used in those vaccines.[1] Appellants claimed that mercury in the vaccines caused Michael neurological injuries. On December 21, 2004,

---

1. The defendants were Aventis Pasteur, Inc., Wyeth, and Merck & Company, Inc., all of whom manufactured pediatric vaccines distributed in Maryland ("the vaccine manufacturer defendants"), and Eli Lilly and Company, which previously had manufactured thimerosal, a preservative containing mercury used in the aforesaid pediatric vaccines. Appellants also sued Baltimore Gas & Electric Company, alleging that Michael's injuries were exacerbated by toxic emissions from cool-burning power plants. However, all claims against this defendant were dismissed by the court, and no appeal was noted by appellants. GlaxoSmithKline Biologicals, S.A. and GlaxoSmithKline were added as additional vaccine manufacturer defendants by the second amended complaint, filed on May 24, 2004.

the circuit court granted summary judgment to appellees after Michael's only expert witness on specific causation abruptly ended his participation in the case. In this appeal, appellants argue that the trial court abused its discretion in denying their motion to dismiss the case without prejudice pursuant to Maryland Rule 2–506(b). For the reasons set forth in this opinion, we will reverse the court's judgment.

## BACKGROUND

Appellants filed suit in the circuit court on April 14, 2003, when Michael was five years old.[2] Michael has autism. Appellants allege that thimerosal, a preservative containing mercury, caused Michael's autism, and that he was exposed to thimerosal when he was vaccinated as a baby. They assert, *inter alia,* that appellees negligently and fraudulently manufactured, marketed, and distributed their products, and as a direct and proximate result, Michael ingested poisonous mercury and suffered permanent neurological, developmental, and behavioral injuries, including his autism.[3] The Skevofilaxes' lawsuit is representative of the many vaccine injury cases throughout the country currently in litigation.

On July 11, 2003, appellees had the case removed to the U.S. District Court for the District of Maryland. Two months later, however, on September 5, 2003, the case was returned to the circuit court. The court convened a hearing on November 13, 2003, at which the parties discussed a schedule for discovery and trial. The court then issued a scheduling order that directed, *inter alia,* the completion of fact discovery by July 30, 2004, identification of appellants' expert witnesses by

---

**2.** Prior to filing suit, the Skevofilaxes filed a petition in the U.S. Court of Federal Claims, pursuant to the National Childhood Vaccine Injury Act of 1986. *See* 42 U.S.C. § 300aa–1, *et seq.* They withdrew this petition to pursue a civil action in state court.

**3.** All of the negligence claims against appellee Eli Lilly and Company were dismissed by the court by order filed February 19, 2004, and appellants' motion for reconsideration of such dismissal was denied in June 2004. Thus only the fraud claims remained against Lilly.

September 1, 2004, identification of appellees' expert witnesses by November 1, 2004, completion of expert discovery by December 15, 2004, filing of all dispositive motions no later than February 15, 2005, and the start of trial on May 2, 2005.

The parties began discovery. According to appellees, they deposed thirteen witnesses and prepared an additional nineteen for deposition by appellants. The parties also exchanged and responded to interrogatories and requests for production of documents. The long list of witnesses and the volume of materials soon led the Skevofilaxes to doubt their ability to meet the fact discovery deadline of July 30, 2004. On June 15, 2004, they requested an extension, which the court granted on July 16, 2004, with the filing of an Amended Scheduling Order. The new scheduling order extended the deadline for fact discovery until December 15, 2004, the deadline for identification of appellants' expert witnesses by two weeks, to September 15, 2004, and the deadline for identification of appellees' expert witnesses by one week, to November 8, 2004. The expert discovery deadline remained December 15, 2004. However, the court denied appellants' request to move the trial date to September 19, 2005, because the presiding judge was scheduled to end his rotation in the civil department on August 31, 2005, and he wanted the trial completed by that time.

On August 2, 2004, the Skevofilaxes requested a modification of the Amended Scheduling Order. They sought and received, in the Second Amended Scheduling Order, three more weeks to identify their expert witnesses, with a new deadline set at October 8, 2004. The expert discovery deadline was extended five days to December 20, 2004.

Discovery continued with appellees retaining expert witnesses and pursuing medical examinations of Michael. Per the Second Amended Scheduling Order, on October 8, 2004, appellants identified eight expert witnesses, four on liability and four on damages. One of the Skevofilaxes' liability experts was expected to testify on specific causation, that is, to express an opinion on how Michael's vaccines caused his

autism. This expert was James Jeffrey Bradstreet, M.D., a family practitioner in Florida.

Appellants faced another obstacle towards the end of October when they learned that Dr. Bradstreet could not formulate a medical opinion as to the cause of Michael's autism without the results of certain tests that would aid him in determining Michael's "genomic susceptibility" to thimerosal. Laboratory clinicians at the University of Arkansas were scheduled to run these tests, but "exigent circumstances" caused them to delay the completion of testing by "at least 30 to 60 days." Without the test results, Dr. Bradstreet could not formulate an expert opinion, and without Dr. Bradstreet's expert opinion, appellants could not present him for deposition by appellees. By letter dated October 26, 2004, appellants' counsel informed appellees that Dr. Bradstreet would not be prepared for his deposition, which, per the Second Amended Scheduling Order, had to be taken no later than November 5, 2004.

On October 29, 2004, appellants requested a continuance of the trial, or, alternatively, dismissal without prejudice. On November 10, 2004, the court convened a hearing, at which it declined to grant a continuance or to dismiss the case without prejudice. Instead, the court directed the parties to collaborate on a new scheduling time line, or, if they could not agree, to submit separate proposals. Based on the parties' proposals, on November 19, 2004, the court issued a Third Amended Scheduling Order. This order directed that Dr. Bradstreet be deposed no later than December 3, 2004, without questioning about the genetic tests underway in Arkansas, and then again by January 14, 2005, if the results from those tests became available. The expert discovery deadline was extended to January 22, 2005, but the filing date for dispositive motions, February 15, 2005, and the trial date, May 2, 2005, remained the same.

Appellants did not have much time to follow the Third Amended Scheduling Order because shortly after it was entered, appellants' counsel learned that Dr. Bradstreet was ending his participation in the case. Counsel immediately

notified the court and appellees' counsel of this dramatic development by letter dated November 23, 2004.

On December 1, 2004, appellants renewed their motion of October 29, 2004, to dismiss all claims without prejudice, pursuant to Rule 2–506(b). Attached to the renewed motion was an affidavit of appellants' counsel stating that Dr. Bradstreet ended his participation "because of professional and personal commitments and time constraints." Also on December 1, 2004, appellees filed motions for summary judgment on the grounds that without Dr. Bradstreet, appellants had no evidence of specific causation, a required element of their claims.[4] On December 21, 2004, following a hearing, the court denied appellants' motion and granted the appellees' motions.[5] "Critical" to the court's decision on appellants' motion was the "extensive" discovery that the parties had completed and "the time, effort and expense" that the parties already had expended on preliminary motions.

Appellants appeal the denial of their motion for dismissal without prejudice and the related grant of appellees' motions for summary judgment. They present the following question for our review:

> Did the lower court abuse its discretion when it refused to permit [appellants], including a minor, to dismiss their claims without prejudice when the dismissal request was compelled by the unforeseen withdrawal from the case of an indispensable liability expert?

Because the court denied appellants' motion to dismiss without prejudice at the same time that it granted appellees'

---

4. Actually, appellee Eli Lilly and Company filed a motion for summary judgment in May 2004 on the fraud claims against it. The circuit court denied this motion in June 2004 in order for further discovery to take place. Following Dr. Bradstreet's withdrawal from the case, Lilly renewed its motion for summary judgment on December 3, 2004, with the previous arguments about appellants' fraud claims, as well as the effect of Dr. Bradstreet's withdrawal.

5. When the court granted appellees' motions for summary judgment on December 21, 2004, it appears to have done so solely on the basis of Dr. Bradstreet's withdrawal.

motions for summary judgment, we review the orders together. Additional facts will be presented as necessary to our discussion of the question presented in this appeal.

## DISCUSSION

### Standard of Review

Maryland Rule 2–506, which governs motions for voluntary dismissal,[6] provides in relevant part:

(a) **By Notice of Dismissal or Stipulation.** Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

(b) **By Order of Court.** Except as provided in section (a) of this Rule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

Rule 2–506(b) clearly states that, absent a request to dismiss prior to the filing of an answer or a summary judgment motion or a stipulation of the parties, "a plaintiff may dismiss an action *only* by order of court and upon such terms and conditions as the court deems proper." *Id.* (emphasis added). Whether to grant a motion for voluntary dismissal is within the court's discretion and will not be overturned absent a showing of an abuse of that discretion. *Owens–Corning Fiberglas Corp. v. Fibreboard Corp.*, 95 Md.App. 345, 349–50, 620 A.2d 979 (1993). "A motion for voluntary dismiss-

---

**6.** For stylistic purposes, we will use "motion for voluntary dismissal" interchangeably with "motion to dismiss without prejudice" in this opinion.

al may be granted with or without prejudice, a decision that is discretionary with the court." *Id.* at 350, 620 A.2d 979.

### Four Factors Governing Trial Court's Exercise of Discretion

In *Owens–Corning,* we advised trial courts to "weigh[] the equities and giv[e] due regard to all pertinent factors" before ruling on a motion for voluntary dismissal under Rule 2–506(b). *Id.* Unfortunately, neither this Court nor the Court of Appeals has identified the "pertinent factors" that should be considered by the trial court in deciding a Rule 2–506(b) motion. The parties in the case *sub judice* urge us to measure this case against four factors that a number of federal courts use to review voluntary dismissal motions under Federal Rule of Civil Procedure 41(a)(2).

■ Maryland Rule 2–506(b) duplicates Federal Rule 41(a)(2) "in language and purpose." [7] *Roane v. Wash. County Hosp.,* 137 Md.App. 582, 589 n. 2, 769 A.2d 263 (2001). The principle underlying Federal Rule 41(a)(2) is "that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2364 (2d ed.1995); *see also Fisher v. P.R. Marine Mgmt., Inc.,* 940 F.2d 1502, 1503 (11th Cir.1991); *Simons v. Southwest Petro–Chem, Inc., A Div. of Whitco Corp.,* 130 F.R.D. 134, 136 (D.Kan.1990). Similarly, commentators on Maryland Rule 2–506(b) have stated: "Court approval will usually be granted unless some prejudice is shown. The mere possibility that the action will be refiled is not sufficient reason to oppose the dismissal." P. Niemeyer & L. Schuett, Maryland Rules Commentary 287 (3d ed.2003);

---

7. Federal Rule of Civil Procedure 41(a)(2) states in part:

 (2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . .

*accord,* J. Lynch & R. Bourne, *Modern Maryland Civil Procedure* § 8.4(a)(2) (2d ed.2004).

██ The Sixth, Seventh, Eighth, and Tenth Circuits have approved the use of four factors in deciding a voluntary dismissal motion. *See County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.,* 311 F.3d 1031 (10th Cir.2002); *Grover v. Eli Lilly and Co.,* 33 F.3d 716 (6th Cir.1994); *Paulucci v. City of Duluth,* 826 F.2d 780 (8th Cir.1987); *U.S. v. Outboard Marine Corp.,* 789 F.2d 497 (7th Cir.1986). The four factors are:

> (1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Paulucci,* 826 F.2d at 783.[8]

We believe that these four factors further the principle underlying Rule 2–506(b) by providing an analytical framework for the determination of whether there exists plain legal prejudice to the defendant that outweighs the preference for granting the plaintiff's request for a voluntary dismissal. These factors, however, are "by no means exclusive," and the trial court may consider "any additional factors unique to the context of [the] case." *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir.1997) (holding that "comity, uniform interpretation of the [Hague] Convention and the importance of giving

---

**8.** Some federal courts compress these four factors into three factors: (1) "whether the party has presented a proper explanation for its desire to dismiss;" (2) "whether a dismissal would result in a waste of judicial time and effort;" and (3) "whether a dismissal will prejudice the defendants." *See Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 950 (8th Cir.1999). Other courts discuss similar considerations with the following five factors: "the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *See Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (2d Cir.1990) (citations omitted).

**14**

import to the Hague Convention's intended purpose" were relevant to the motion to dismiss); *see County of Sante Fe, N.M.,* 311 F.3d at 1048 (recognizing the principle of *res judicata* as a factor "unique" to the particular circumstances of the case).

In applying the above four factors and any other relevant factors, the trial court can weigh one factor more than another, because the particular facts of the case may demand more attention to one factor than to another. *See County of Sante Fe, N.M.,* 311 F.3d at 1049 n. 14 (holding that the "unique" factor in the case outweighed most of the traditional factors that favored granting the motion to dismiss). Moreover, "[e]ach factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper." *Ohlander,* 114 F.3d at 1537. In reaching its conclusion, the trial court "should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff." *Brown v. Baeke,* 413 F.3d 1121, 1124 (10th Cir.2005) (quoting *County of Sante Fe, N.M.,* 311 F.3d at 1048); *see Owens–Corning,* 95 Md.App. at 350, 620 A.2d 979.

In sum, in ruling on a Rule 2–506(b) motion, the task of the trial judge is to determine: (1) the presence, *vel non,* of each factor, (2) the extent to which the presence or absence of each factor favors one party or the other, and (3) the appropriate weight to be given to each factor, with due regard to the equities of the parties and the principle underlying the rule, *to wit,* dismissal is preferred unless the defendant will suffer plain legal prejudice.[9]

---

9. Although not raised by the parties or considered by the court in the case *sub judice,* Rule 2–506(b) expressly authorizes the trial court to grant a motion to dismiss without prejudice "upon such terms and conditions as the court deems proper." The rule "allows the court to prevent prejudice to the defendant in such cases by attaching conditions to the dismissal." *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253,

In the instant case, the trial court considered each of the four factors in denying appellants' motion for voluntary dismissal. We shall now review the trial court's application of the four factors to the facts of this case.

## *Application of the Four Factors*

### 1. Effort and Expense

██ The trial court determined that appellees' effort and expense in preparing for trial weighed in favor of denying appellants' motion for voluntary dismissal. In support of this determination, the court found that there was "significant effort and expense on all sides in preparing for trial." This is undeniably true. By December 1, 2004, the parties already had taken thirty-two depositions, exchanged voluminous documents, and spent considerable time and money developing their respective cases. Nonetheless, appellants point out that most of the witnesses deposed in the instant case are witnesses in other vaccine injury cases around the country. Indeed, nineteen of the depositions that occurred were cross-noticed with other vaccine injury cases, leaving only thirteen depositions that were specific to this case. Regardless of the outcome in the instant case, therefore, the effort expended in preparing and/or deposing the cross-noticed witnesses will not be wasted. *See P.R. Mar. Shipping Auth. v. Leith,* 668 F.2d 46, 50 (1st Cir.1980) (allowing voluntary dismissal after extensive discovery had been conducted because the discovered information could be used in another pending suit).

---

1258 (11th Cir.2001). Examples of "curative" conditions imposed by a court when granting a dismissal include carryover discovery to a refiled case and reimbursement of any duplicative expenses incurred by the defendant, *Brown,* 413 F.3d at 1126, reimbursement of defendant's litigation expenses and attorney's fees in defending the initial suit, *Sobe News, Inc. v. Ocean Drive Fashions, Inc.,* 199 F.R.D. 377, 378 (S.D.Fla. 2001), and payment of defendant's costs if the plaintiff should later refile the lawsuit, *Pontenberg,* 252 F.3d at 1260. Therefore, "the effective use of curative conditions can help balance competing equities and ensure that substantial justice is done for all parties, which is the goal of the Rule 41(a)(2) analysis." *Brown,* 413 F.3d at 1126.

 Moreover, in considering effort and expense, the focus is not the amount of time or money *per se* that has been spent on the litigation. The focus should always remain on the substantive question of whether and to what extent the defendant was prejudiced by the time and money expended. *See D'Alto v. Dahon Cal. Inc.*, 100 F.3d 281, 283 (2d. Cir.1996) (stating that "[a] voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed 'if the defendant will not be prejudiced thereby'"). In this regard, not only will the nineteen cross-noticed depositions remain useful to appellees, but, as appellants suggest, some of the thirteen "case specific" depositions may not need to be retaken or may need only to be updated if appellants' claims are refiled. Also, at the time of the hearing on appellants' motion, one month remained for expert discovery, and appellants' four liability experts and one of appellees' experts had not been deposed.

## 2. Diligence

 We next consider whether excessive delay or lack of diligence contributed to appellants' request for dismissal without prejudice. Dismissal with prejudice of a party's complaint "is warranted when there is a clear record of delay or contumacious conduct by the plaintiff." *Jones v. Smith*, 99 F.R.D. 4, 6 (D.Pa.1983); *see also Edwards v. Demedis*, 118 Md.App. 541, 565, 703 A.2d 240 (1997) (affirming dismissal of claim with prejudice because claim had been pending for more than a year-and-a-half, and, without legitimate reason, plaintiffs requested dismissal one month before trial). Dismissal with prejudice is a harsh sanction that must be proportionate to the transgression of the party whose action is dismissed. *See Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir.2005). To warrant dismissal with prejudice, therefore, plaintiff must have acted "intentionally as opposed to accidentally or involuntarily." *Id.*

The trial court specifically found that there was no lack of diligence on the part of appellants. The court stated: "I will say, as all counsel have stated here, there has been *no lack of diligence whatsoever* on behalf of [appellants' counsel] in the

context of the plaintiffs' efforts in this case." (emphasis added). The evidence in this case fully supports the court's finding. Appellants endeavored to follow the discovery schedule set by the court throughout the period between November 13, 2003, when they first met with the trial judge to discuss a scheduling time line for the case, and November 23, 2004, when they learned of Dr. Bradstreet's withdrawal. When they encountered difficulties meeting the court's deadlines, appellants sought several modifications of the scheduling order. The court granted only minor adjustments to the scheduling order, never changing the trial date or the date for filing dispositive motions. For example, the deadline for appellants' expert designation was moved only five weeks, from September 1, 2004 to October 8, 2004. Appellants named their expert witnesses on October 8, 2004.

It was not until the unforeseen events of the delay in the test results from the University of Arkansas in October 2004, and the withdrawal of Dr. Bradstreet in November 2004, that appellants' efforts to comply with their discovery obligations were ultimately frustrated. Even then, appellants promptly notified the court and opposing counsel. All of the aforementioned circumstances, therefore, demonstrated appellants' diligence in prosecuting their claims in this case.

### 3. Explanation for the Dismissal

The third factor for our consideration is the sufficiency of appellants' explanation for their request to have the case dismissed without prejudice. Appellants informed the court that Dr. Bradstreet withdrew from the case for personal reasons. The defendants implied that this reason was pretextual, because Dr. Bradstreet was unwilling or unable to render an expert opinion favorable to appellants' claims. The trial court stated:

The third [factor], insufficient explanation of a need for a dismissal. There has been the explanation for the dismissal. Whether or not it's sufficient or not, really is dependent on the facts of this case. And, the facts of this case demonstrate that the plaintiffs have conceded that Dr. Bradstreet

is, indeed, the sole expert on specific causation. And, without that opinion, they are unable to prosecute their claims.

We can infer from the above statements that the trial court found appellants' reasons for Dr. Bradstreet's withdrawal to be legitimate, but without Dr. Bradstreet's expert opinion on specific causation, appellants could not prove a *prima facie* case against appellees. If the trial court had accepted appellees' argument that the reasons for Dr. Bradstreet's withdrawal were pretextual, it certainly would have said so.

Appellees continue to argue on appeal that Dr. Bradstreet pulled out of the case, not because of personal reasons, but because he received the genetic test results for Michael and they did not support appellants' claims for damages.[10] We see no support for this contention in the record. In their renewed motion for dismissal without prejudice, filed on December 1, 2004, appellants attached an affidavit from appellants' counsel, in which he said that "Dr. Bradstreet has not concluded his evaluation and has not reached any final opinion regarding specific causation." This statement is consistent with Dr. Bradstreet's earlier affidavit, filed as an attachment to appellants' memorandum in support of their October 29, 2004

---

10. Appellees also contend that the Skevofilaxes cannot prove specific causation in Michael's case, because currently the scientific community does not recognize a link between thimerosal and autism. They argue, therefore, that summary judgment was appropriate because causation is a required element of the causes of action pursued by appellants. Appellees rely on *Blackmon v. American Home Products Corp.*, 2005 WL 1503547 (S.D.Tex.2005), in which a U.S. District Court in Texas denied plaintiffs' request for dismissal without prejudice and granted summary judgment to the defendants in a vaccine injury case. As in this case, plaintiffs in *Blackmon* did not have an expert witness who would testify on specific causation. The Texas court would not allow plaintiffs "to pursue this litigation again later when they may have evidence of causation" because they relied only "on their own conjectures about the facts or on hopes of what future discovery or scientific research might add to their case." *Id. Blackmon* is readily distinguishable from the case *sub judice*. Here, the trial court did not rule that no evidence existed in the relevant scientific community to support appellants' claims. More importantly, *Blackmon* did not involve the unforeseen withdrawal of a critical expert witness for reasons unrelated to the merits of the case.

motion for continuance or for dismissal without prejudice. In that affidavit, Dr. Bradstreet said that the test results from the University of Arkansas laboratory would be delayed "at least 30–60 days." The sixtieth day thus would have been almost thirty days after the filing of appellants' December 1 renewed motion for dismissal without prejudice.

On December 11, 2004, about two-and-a-half weeks after Dr. Bradstreet pulled out of the instant case, he was deposed by appellees in another vaccine injury case. Appellees' attorney questioned Dr. Bradstreet about his decision to withdraw from the instant case, and Dr. Bradstreet explained that the withdrawal was "[m]ostly [his] wife's decision," and that "she felt [he] needed to spend more time with the family." This deposition testimony confirmed the reason that appellants gave for their dismissal request on December 1, 2004. Therefore, we conclude that the trial court properly found that appellants' reasons for requesting a dismissal without prejudice were sufficient, because their sole expert on specific causation unexpectedly withdrew from participation in this case for reasons unrelated to the viability of appellants' claims.

### 4. Pending Summary Judgment Motion

The fourth factor asks whether a motion for summary judgment prompted the motion for dismissal without prejudice. *See Pace v. So. Express Co.,* 409 F.2d 331, 334 (7th Cir.1969) (denying plaintiff's request for voluntary dismissal because, among other things, the defendant had filed and briefed the court on a motion for summary judgment). Courts are hesitant to grant motions for dismissal that are merely attempts to avoid an undesirable consequence of litigation. *See Owens–Corning,* 95 Md.App. at 350, 620 A.2d 979 (discussing the historical purpose of Rule 2–506 to prevent plaintiffs from dismissing actions for purely tactical reasons); *see also Greguski v. Long Island R.R. Co.,* 163 F.R.D. 221, 224 (S.D.N.Y.1995) (denying plaintiff's request for withdrawal without prejudice because it was a mere substitute for adjournment of trial, which the court previously disallowed); *Millsap v. Jane Lamb Mem'l Hosp.,* 111 F.R.D. 481, 484

(S.D.Iowa 1986) (denying plaintiff's request for voluntary dismissal, which was made in response to the defendant's motion for summary judgment just before trial).

In this case, appellees filed motions for summary judgment at the same time that appellants filed their motion to dismiss without prejudice. Appellees filed their motions because appellants' counsel advised them on November 23, 2004, that Dr. Bradstreet had declined to participate further in the case. Appellants' motion, therefore, was not filed in response to appellees' motions in order to avoid an inevitable end to the litigation. When appellees filed their motions for summary judgment, discovery was not complete and the trial date was five months away. Indeed, under the court's Third Amended Scheduling Order, dispositive motions were not even due until February 15, 2005, more than two months after the filing of appellants' and appellees' motions. Although the trial court did not make any determination as to whether this factor favored appellants or appellees, the only conclusion supported by the record in this case is that this factor favors the granting of appellants' motion to dismiss without prejudice.

### Michael's Status as a Minor

The particular circumstances of the case *sub judice* present an additional factor that the trial court must consider in deciding a motion to dismiss without prejudice under Maryland Rule 2–506(b)—Michael's status as a minor. Traditionally, Maryland courts have been sensitive to the legal rights of minors and have had occasion to protect those rights against legislative infringement and prejudice by the minor's "next friend." In *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508 (2002), the Court of Appeals held unconstitutional the statute of limitations governing claims by minors against health care providers, because the statute provided that limitations would begin to run prior to a minor attaining the age of majority. *See id.* at 215–16, 808 A.2d 508.

In *Fulton v. K & M Associates,* 331 Md. 712, 629 A.2d 716 (1993), the minor plaintiff alleged in his complaint that he suffered lead poisoning while living in certain apartment build-

ings. However, his mother, who filed the action on his behalf, repeatedly failed to procure the necessary testing that would have enabled a medical expert to determine whether the child's deficits were probably caused by exposure to lead. *Id.* at 716, 629 A.2d 716. At trial, plaintiff's counsel sought a voluntary dismissal, pursuant to Rule 2–506(b), in order to preserve the child's cause of action. The trial court denied plaintiff's motion, whereupon the trial proceeded. At the close of plaintiff's evidence, the court granted defendants' motion for judgment pursuant to Maryland Rule 2–519. *Id.* at 715, 629 A.2d 716.

In reversing, the Court of Appeals reasoned that "[h]ad the trial judge not been considering the claim of an infant, the record would support a holding that the trial court did not abuse its discretion in denying the motion for voluntary dismissal without prejudice." *Id.* at 717, 629 A.2d 716. Because the plaintiff was a minor, however, the trial court owed him a duty "to insure that the next friend d[id] not prejudice the rights and interests of the minor through conflict of interest, fraud, or neglect." *Id.; see also Berrain v. Katzen,* 331 Md. 693, 711, 629 A.2d 707 (1993).[11]

If the circumstances of *Fulton* did not justify the denial of a motion to dismiss without prejudice under Rule 2–506(b), the facts of this case provide even less justification for denying such motion. In *Fulton,* there was dilatory and neglectful conduct on the part of the "next friend," whereas here, the "next friends," Michael's parents, prosecuted Michael's claims with diligence, but were prevented from proceeding with the litigation because of the unexpected withdrawal of a critical expert witness.

---

11. In *Berrain,* which was decided the same day as *Fulton,* the Court of Appeals reversed the dismissal of an infant's lead paint claim as a sanction for the "next friend's" failure to cooperate with discovery. The Court stated: "[T]he trial court has a special duty to protect the rights and interests of the minor plaintiff who is represented by next friend to insure that the next friend does not prejudice those rights and interests through conflict of interest, fraud, or, in this case, neglect." *Berrain,* 331 Md. at 711, 629 A.2d 707.

The trial court recognized its obligation to consider that the instant case involved claims of a minor plaintiff. The court even said that it was "most empathetic with that issue." However, the court overlooked its "special duty" to protect the rights and interests of minor plaintiffs, which duty was the underlying principle of the holdings in *Fulton* and *Berrain.* The court stated here that it "d[id] not believe that a minor's motion for voluntary dismissal is, or should be analyzed any differently than any other voluntary dismissal motion."

### *Analysis*

 It is clear from the transcript of the December 21, 2004 hearing that the circuit court carefully considered each of the factors discussed above. We respect its consideration and are cognizant of our deferential standard of review. *See Owens–Corning,* 95 Md.App. at 349–50, 620 A.2d 979. Nonetheless, we conclude that the trial court abused its discretion under Rule 2–506(b) when it denied appellants' motion. The court made the first factor, appellees' effort and expense, determinative of its decision when that factor (a) is not compelling under the facts of the instant case, and (b) was the only one that the court found weighed in appellees' favor. After considering all of the factors and concluding that to grant appellants' motion would be "inappropriate," the court stated:

> Critical to the court is the extensive discovery that has been undertaken. The thirteen depositions. The corporate designees that have been noted. The time, effort and expense in briefing the preliminary motions, and gathering discovery, and presenting dispositive motions to the Court, that are relevant to the Court's consideration.

As previously discussed, a majority of the depositions taken in this case were cross-noticed, and consequently, can be used by appellees in other vaccine injury cases. The remaining "case specific" depositions may not have to be redone or may need only to be updated. Moreover, several expert depositions had not been taken as of the date that the court denied appellants' motion. Although appellees certainly expended

considerable effort and expense in obtaining discovery and filing preliminary motions, they had not filed any dispositive motions *after* the close of discovery and, with the trial five months away, probably had not engaged in trial preparation. Thus the record does not support the significance placed by the court on the first factor in its analysis of appellants' Rule 2–506(b) motion.

In addition, all of the other factors in the four factor test weigh in favor of granting appellants' motion. Appellants diligently prosecuted their claims. They presented to the court a valid reason for their motion for voluntary dismissal— the unexpected withdrawal of their expert witness for personal reasons. Finally, appellants did not file their motion in response to appellees' motions for summary judgment in order to avoid an inevitable end to the litigation. Therefore, because the record does not support the significance attributed to the first factor by the court, the record clearly cannot justify the determinative weight assigned to that factor by the court over all of the other three factors.

The trial court also failed to give any consideration to the additional factor "unique to the context of [the] case," *Ohlander*, 114 F.3d at 1537,—the status of Michael as a minor in prosecuting his claims against appellees. The court expressly analyzed appellants' motion under Rule 2–506(b) no differently than any other voluntary dismissal motion. In so doing, the trial court failed to discharge its "special duty" to protect the rights and interests of a minor plaintiff. *See Fulton*, 331 Md. at 717, 629 A.2d 716; *Berrain*, 331 Md. at 711, 629 A.2d 707. "[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards." *Alston v. Alston*, 331 Md. 496, 504, 629 A.2d 70 (1993); *see also Ohlander*, 114 F.3d at 1537 ("A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based.").

We conclude that clear legal prejudice to appellees cannot be found based on the record in the case *sub judice,* and consequently, the trial court abused its discretion when it denied appellants' motion to dismiss without prejudice pursuant to Rule 2–506(b). The effort and expense incurred by appellees, much of which will not be wasted, cannot outweigh the unexpected withdrawal of a critical expert witness for personal reasons, prior to the end of discovery and five months before trial, in a diligently prosecuted claim of a minor for injuries allegedly sustained as a result of ingesting certain pediatric vaccines.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED WITH INSTRUCTIONS TO THE TRIAL COURT TO DISMISS ALL CLAIMS OF APPELLANTS AGAINST APPELLEES WITHOUT PREJUDICE; APPELLEES TO PAY COSTS.**