914 A.2d 113

**AVENTIS PASTEUR, INC., et al.**

v.

**John SKEVOFILAX, Individually, etc., et al.**

**No. 15, Sept. Term, 2006.**

Court of Appeals of Maryland.

Jan. 8, 2007.

Stephen E. Marshall (Paul F. Strain, Mitchell Y. Mirviss, David S. Gray, Venable LLP, Baltimore), for petitioners.

Paul W. Spence (Paul W. Spence, P.A., Towson, C. Andrew Waters, Waters & Kraus, LLP, Dallas, TX, on brief), for respondents.

D'Ana E. Johnson, Carolyn Israel Stein, Bonner Kiernan Trebach & Crociata, Washington, DC, for Aventis Pasteur, Inc.

Carlos E. Provencio, Shook, Hardy & Bacon, L.L.P., Washington, DC, for Eli Lilly & Co.

Ava Lias-Booker, McGuire Woods LLP, Baltimore, Deborah M. Russell, McGuire Woods, LLP, Richmond, VA, Winstol D. Carter, Jr., Marcy Hogan Greer Fulbright & Jaworski, L.L.P., Houston, TX, for GlaxoSmithKline & GlaxoSmithKline Biologicals, S.A.

Daniel J. Thomasch, Richard W. March, Orrick, Herrington & Sutcliffe, LLP, New York City, Raymond G. Mullady, Jr., Kenneth Y. Turnbull, Orrick, Herrington & Sutcliffe, LLP, Washington, DC, for Wyeth.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

On 14 April 2003, Helen and John Skevofilax (Respondents here), individually and as next friends of their eight-year-old son, Michael, filed suit in the Circuit Court for Baltimore City seeking damages from Defendants (Petitioners here), several corporations engaged in the manufacture of pediatric vaccines and the ingredients incorporated in the vaccines.[1] The Plaintiffs–Respondents claimed that Michael's autism spectrum disorder was caused by thimerosal, a mercury-containing preser-

---

[1] The initial defendants were Aventis Pasteur, Inc., Merck & Company, Inc., and Wyeth, Inc. Alleged thimerosal manufacturer Eli Lilly and Company was added by a first amended complaint. A second amended complaint added SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline and GlaxoSmithKline Biologicals, S.A. All are engaged in the manufacture of pediatric vaccines distributed in Maryland. These

vative used in pediatric vaccines administered to Michael as an infant. The disposition of the complaint on preliminary motions is what brings this case to us. On 21 December 2004, the Circuit Court denied Respondents' motion for dismissal of the complaint without prejudice, and granted summary judgment in Petitioners' favor. The court, having extended discovery three times by way of amended scheduling orders, determined that summary judgment was appropriate in light of Respondents' "conceded inability to produce an expert witness on the area of specific causation in connection with this proceeding."

Respondents noted a timely appeal, arguing that the trial court abused its discretion in denying their motion to dismiss without prejudice pursuant to Maryland Rule 2–506(b).[2] The Court of Special Appeals, in a reported opinion,[3] agreed with

---

six defendants hereinafter will be referred to sometimes as the "Vaccine Defendants."

Baltimore Gas & Electric Co. ("BGE") and its parent corporation, Constellation Energy Group, Inc., also were named as defendants. Specifically, Plaintiffs claimed that Michael's injuries were aggravated by toxic emissions originating from coal-burning power plants operated by BGE in Maryland. All claims against BGE and Constellation Energy Group, Inc., were dismissed on 17 February 2004. The disposition of the claims against BGE and Constellation Energy Group, Inc., are not before this Court in the present case.

2. Maryland Rule 2–506, in pertinent part, provides

(b) By order of court. Except as provided in section (a) of this Rule, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been filed before the filing of a plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who filed the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

Effect. Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operated as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

3. *Skevofilax v. Aventis Pasteur, Inc.*, 167 Md.App. 1, 891 A.2d 416 (2006).

the Skevofilaxes and reversed. The intermediate appellate court reasoned that the need to protect Michael's rights as a minor warranted a voluntary dismissal, in lieu of the summary judgment entered in Petitioners' favor.

For reasons we shall explain, we reverse the judgment of the Court of Special Appeals. It was neither an abuse of discretion by the Circuit Court to deny Respondents' motion to dismiss nor error of law to enter summary judgment in favor of Petitioners.

## BACKGROUND

Respondents' complaint in the Circuit Court alleged that toxic levels of mercury in the thimerosal contained in vaccinations, administered to Michael as a baby, caused his autism.[4] This lawsuit thus became one of many thimerosal vaccine cases maintained throughout the country.

On 30 September 2003 Judge Stuart R. Berger of the Circuit Court for Baltimore City was assigned specially to preside over the case.[5] The parties met on 13 November 2003 in order to discuss a scheduling order for discovery, preliminary motions, oppositions and replies, pre-trial conferences, and the trial itself. The court issued, on 18 November 2003, a Scheduling Order requiring completion of all discovery, including depositions and resolution of any fact discovery disputes, no later than 30 July 2004. The Order further directed the identification of Respondents' expert witnesses on or before 1 September 2004 and identification of Petitioners' experts by

---

**4.** The complaint filed by Respondents contained twenty counts sounding in strict products liability, negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, conspiracy, and public nuisance in connection with the manufacture, marketing, and distribution of the pediatric vaccines. The complaint additionally alleged violations of the Maryland Consumer Protection Act.

**5.** The case was initially removed by Petitioners to the U.S. District Court for the District of Maryland on 11 July 2003. The case was remanded to the Circuit Court for Baltimore City early in September 2003.

no later than 1 November 2004. The experts were required to be available for deposition no later than by 30 September and 30 November 2004, respectively. The Order also called for completion of all discovery of experts, including depositions, no later than 15 December 2004, required all dispositive motions to be filed no later than 15 February 2005, and directed that the parties attend a pre-trial conference on 4 April 2005. Trial was set for 2 May 2005.

Discovery began with the depositions of Mr. and Mrs. Skevofilax, and the scheduling of several other depositions to be taken at a later date. By letter dated 24 May 2004, however, Respondents' counsel expressed doubt to the Circuit Court that the 30 July 2004 deadline for completion of fact discovery could be met. According to Respondents, Glaxo-SmithKline recently was added as a defendant by the Second Amended Complaint filed on 24 May 2004, and Wyeth had served Respondents' counsel with approximately 20,000 documents in response to Respondents' discovery requests. The Skevofilaxes accordingly filed a Motion to Modify the Scheduling Order on 15 June 2004. Following a hearing, the court ordered on 13 July 2004 (the Amended Scheduling Order) that the following changes be made in the Scheduling Order: (1) the date for completion of fact discovery was extended from 30 July 2004 to 15 December 2004; (2) the deadline for designation of Respondent's expert witnesses was pushed-back two weeks to 15 September 2004, and the time for deposing those experts was likewise moved to 15 October 2004; (3) the date for identification of Petitioner's witnesses was moved back one week to 8 November 2004; and, (4) the deadline for deposing them was changed to 7 December 2004 from 30 November 2004. Judge Berger refused, however, to grant Respondents' request to move the trial date to 19 September 2005 because time constraints imposed by operation of the Circuit Court's docket rotation system mitigated against such a delay.[6]

---

6. According to the rotation system, Judge Berger would be re-assigned from the civil to the criminal docket from 1 September 2005 through 1

Respondents filed a Motion to Modify Amended Scheduling Order on 2 August 2004, citing the "extensive document production, numerous depositions of fact witnesses and corporate designees, and the appearance of [GlaxoSmith-Kline]...." [7] After another hearing, the Circuit Court, on 2 September 2004, again extended discovery (Second Amended Scheduling Order). The time for designation of Respondents' experts was extended another three weeks to 8 October 2004, and those experts were to be available for deposition by no later than 5 November 2004. The deadline for identification of Petitioners' experts was changed to 29 November 2004, and they were to be available for deposition on or before 20 December 2004. The deadline for completion of all discovery as to proposed expert witnesses was extended five days to 20 December 2004.

Respondents designated four expert witnesses as to liability and four experts as to damages on 7 October 2004. One, James Jeffrey Bradstreet, M.D., was designated to testify to specific causation, i.e., "that significant amounts of mercury to which the minor plaintiff was exposed, including bolus doses received as a result of vaccination, was a substantial factor in causing [Michael's] current injuries and symptoms," and further, "that the exposure to toxic levels of mercury within the vaccines [was] a substantial contributing factor to the minor Plaintiff's ultimate injuries and symptoms." Dr. Bradstreet was the sole expert named by Respondents on the question of specific causation. [8]

---

March 2006, and would be unauthorized to entertain any civil proceedings during that period.

7. The reasons cited first appeared in a letter dated 19 July 2004, wherein Respondents warned Petitioners' counsel that another round of extensions might be necessary.

8. Dr. Bradstreet held a Florida medical license and was the Founder and Director of a facility denominated as Clinical Programs for The International Child Development Resource Center; however, he neither held inpatient hospital privileges, nor was he board-certified in any particular speciality.

On 26 October 2004, Respondents notified Petitioners, by letter, that "due to unforeseen circumstances [genomic profiling] test results critical to [Dr.] Bradstreet's opinions" would be delayed up to sixty days.[9] The relevant genomic susceptibility tests assertedly needed for Dr. Bradstreet's expert medical opinion were being performed by a laboratory at the University of Arkansas. An affidavit completed by Dr. Bradstreet stated that an outbreak of leukemia in New Mexico caused the Arkansas lab's director, Dr. Jill James, to be called out of town to consult on that outbreak, and that she would not be returning for several weeks. Drs. James and Bradstreet previously had collaborated on other projects. According to Dr. Bradstreet, he would be unable to formulate an expert medical opinion regarding causation specific to Michael's injuries until the results of the genetic test results were received from Dr. James' lab.

Respondents filed on 29 October 2004 a Motion for Continuance or, in the Alternative, Dismissal of All Claims Without Prejudice. The parties came before the court on 10 November 2004 to discuss the discovery issues raised by the motion. The court, after hearing from all parties, concluded that neither a continuance nor dismissal was appropriate, given the time constraints imposed by the court's docket rotation system. Judge Berger instead urged that the parties "endeavor to agree upon a Third Amended Scheduling Order." If the parties could not settle upon a mutually agreeable schedule, they each were to provide the court with a proposed order. The parties were unable to collaborate successfully on a unified, new scheduling order, citing disputes over specific dates for deposition of Respondents' expert witnesses. They submitted competing proposals on 17 November 2004.

The Circuit Court entered a Third Amended Scheduling on 19 November 2004. The dates for dispositive motions, pre-

---

**9.** Dr. Bradstreet asserted the need for the testing regarding a potential gene "polymorphism" (mutation) which, according to his theory, if it existed would indicate Michael's "genomic susceptibility" to adverse effects from exposure to thimerosal.

trial conference, and the trial itself remained unchanged. The deadline for completion of all fact discovery, including depositions of fact witnesses and full resolution of disputes, was delayed until 31 December 2004. Of particular relevance to the posture of the case as it comes to us, the court ordered further that Dr. Bradstreet be made available for initial deposition on 19 November 2004. According to the court,

[a]ppropriate topics of inquiry for this deposition, [were to] include, but not be limited to, the nature and purpose of the GST [glutathione-S-transferase, a particular family of enzymes in the human genome] M1 [a particular gene which encodes the GST enzyme] polymorphism [i.e., difference or variation] test, the work that Dr. Bradstreet [had] performed to date in this action, his qualifications, his affidavit submitted in connection with Plaintiff's Motion for Continuance, all of his opinions on the subject of general causation, and the results of those tests that Dr. Bradstreet [had] performed or directed to be performed and that [were] available as of the date of [the] initial discovery deposition.

In the event that the genomic susceptibility tests from Dr. James' lab became available later, the court continued, Dr. Bradstreet would be made available for additional discovery by no later than 14 January 2005 in order to explain how those results pertained to his expert opinion regarding specific causation.

Counsel for Respondents informed the Circuit Court and opposing counsel, by letter dated 23 November 2004, that Dr. Bradstreet declined to participate further in the litigation. According to Respondents' counsel, Dr. Bradstreet withdrew due to outside "professional and personal commitments and time constraints." [10] Respondents, pursuant to Maryland Rule

---

10. This reason originally was mentioned in an affidavit of Respondents' counsel in the national thimerosal litigation, attached to the Memorandum in Support of Plaintiffs' Renewed Motion for Dismissal of All Claims Without Prejudice in the present case. Also found in the record of the present case, Dr. Bradstreet maintained during a deposition in *Easter v. American Home Products Corp.*, No. 5:03–CV–141, a thimerosal case pending in the U.S. District Court for the Eastern District of

2–506(b), renewed their Motion for Dismissal of All Claims Without Prejudice on 1 December 2004. Vaccine Defendants filed a Motion for Summary Judgment on that date.

The court rendered an oral opinion from the bench on 21 December 2004 denying Respondents' motion for voluntary dismissal without prejudice, and granting the motions for summary judgment in favor of Petitioners.[11] The court began by acknowledging that it was a matter of discretion whether a dismissal without prejudice was appropriate. Judge Berger recounted several factors that he considered in deciding the motion, including: effort and expense in preparing for trial; excessive delay or lack of diligence on the part of the movant; the sufficiency of the reason of the need for dismissal; and whether there were any dispositive motions pending. The court analyzed the facts of the case in light of these factors, and determined that dismissal without prejudice was not appropriate.

Judge Berger reasoned:

[t]he Court does have to take into consideration in the facts of this case that there [ ] [is a] minor plaintiff[ ] involved. And the Court is most empathetic with that issue. Nevertheless, the Court distinguishes this case from a case such as *Berrain v. Katzen[,]* [331 Md. 693, 629 A.2d 707 (1993)], or *Fulton v. K & M Associates[,]* [331 Md. 712, 629 A.2d 716(1993)], relied upon by the plaintiffs, where there was either parental, or guardian neglect, or even perhaps the neglect of attorneys. That is not an issue in this case.

Critical to the circuit court's analysis was the significant time and money that had been expended in preparing pleadings and preliminary motions, and the conduct of extensive discovery.

---

Texas, that the primary reason for his withdrawal was the impact the time commitment would have on his ability to spend time with his family.

**11.** Consistent written orders were docketed the same day.

Turning to the pending motions for summary judgment pursuant to Maryland Rule 2–501,[12] Judge Berger opined that "[w]ithout any expert testimony on the issue of specific causation, the Court must grant the vaccine defendants' motion for summary judgment as a matter of law." Causation, an essential element to the cause of action, according to Judge Berger, simply was not demonstrated on the record.

On appeal by the Skevofilaxes, the Court of Special Appeals reversed, holding that

> [t]he effort and expense incurred by appellees, much of which will not be wasted, cannot outweigh the unexpected withdrawal of a critical expert witness for personal reasons, prior to the end of discovery and five months before trial, in a diligently prosecuted claim of a minor for injuries allegedly sustained as a result of ingesting certain pediatric vaccines.

*Skevofilax v. Aventis Pasteur, Inc.,* 167 Md.App. 1, 24, 891 A.2d 416, 430 (2006). We issued a writ of certiorari, on petition by the Vaccine Defendants, to address the following questions: [13]

1. Whether it was an abuse of discretion, under *Fulton v. K & M Associates,* 331 Md. 712, 629 A.2d 716 (1993) and *Berrain v. Katzen,* 331 Md. 693, 629 A.2d 707 (1993), for the Circuit Court for Baltimore City to deny a minor plaintiff's motion for voluntary dismissal without prejudice when there is no evidence of neglect or improper action by the minor's next friend.

---

**12.** Maryland Rule 2–501 provides, in pertinent part:

(a) Motion. Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record.

**13.** The questions presented in the petition for writ of certiorari are reworded slightly for clarity.

2. Whether the Circuit Court abused its discretion when it denied a minor plaintiff's motion to dismiss without prejudice, and instead entered summary judgment in favor of Petitioners, after the court granted three extensions of the discovery schedule at the request of Respondents, and the Respondents' sole expert relating to specific causation withdrew from the litigation without ever having offered his expert opinion.

## DISCUSSION

### I. Standard of Review Regarding Dismissal

Maryland Rule 2–506, as relevant to voluntary dismissal by order of court, provides:

\* \* \*

■ (b) By order of court. Except as provided in section (a) of this Rule, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been filed before the filing of a plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who filed the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

(c) Effect. Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

Rule 2–506(b) is patterned after Federal Rule of Civil Procedure ("FRCP") 41(a)(2). *Owens–Corning Fiberglas Corp. v. Fibreboard Corp.*, 95 Md.App. 345, 349, 620 A.2d 979, 982 (1993). "Under [FRCP] Rule 41(a)(2) and [Maryland] Rule 2–506(b), the granting of a motion for voluntary dismissal is within the [trial] court's discretion, after weighing the equities

and giving due regard to all pertinent factors." *Owens– Corning,* 95 Md.App. at 349–50, 620 A.2d at 982; 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 41.40[2] (3d ed. 1999) ("The decision to grant or deny a voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the [trial] court."); *see also, e.g., Conafay v. Wyeth Laboratories,* 793 F.2d 350, 353–54 (D.C.Cir.1986); *Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3d. Cir.1991); *Gap, Inc. v. Stone Int'l Trading, Inc.,* 169 F.R.D. 584, 588 (S.D.N.Y.1997). Thus, the trial judge's decision under Maryland Rule 2–506(b) will not be overturned on appeal absent a showing that the judge abused that discretion. *Owens–Corning,* 95 Md.App. at 350, 620 A.2d at 982; 8 MOORE'S FEDERAL PRACTICE ¶ 41.40[11][a]; *see also, e.g., Puerto Rico Maritime Shipping Auth. v. Leith,* 668 F.2d 46, 49 (1 st Cir.1981) (holding that the trial court's "decision to grant a motion to dismiss under [FRCP] 41(a)(2) is reviewable only for abuse of discretion"); *Conafay,* 793 F.2d at 354.

■ The analytical paradigm by which we assess whether a trial court's actions constitute an abuse of discretion has been stated frequently. In *Wilson v. John Crane, Inc.,* 385 Md. 185, 867 A.2d 1077 (2005), for example, we iterated

[t]here is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court[ ]"... or when the court acts "without reference to any guiding principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[ ]" ... or when the ruling is "violative of fact and logic."

Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be reversed "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing

court and beyond the fringe of what that courts deems minimally acceptable."

385 Md. at 198–99, 867 A.2d at 1084 (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13, 701 A.2d 110, 118–19 (1997)). An abuse of discretion, therefore, "should only be found in the extraordinary, exceptional, or most egregious case." *Wilson,* 385 Md. at 199, 867 A.2d at 1084.

## II. Dismissal of Claims without Prejudice

### A. Factors Informing the Circuit Court's Exercise of Discretion.

"The decisional law under [FRCP] 41 serves as a guide to the circumstances under which dismissal will not be allowed [pursuant to Maryland Rule 2–506]." PAUL V. NIEMEYER & LINDAM. SCHUETT, MARYLAND RULES COMMENTARY 351–52 (2nd ed.1992) (hereinafter "Maryland Rules Commentary"). Courts will generally grant a motion for voluntary dismissal unless the defendant(s) will suffer some "plain legal prejudice" if the dismissal is granted. The mere possibility that the action could be refiled in the future, however, is not a sufficient reason to find the legal prejudice necessary to bar a court-granted dismissal. CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2364 (2nd ed.1995); MARYLAND RULES COMMENTARY 351–52 ("Court approval will usually be granted unless some prejudice is shown. The mere possibility that the action will be refiled is not sufficient reason to oppose the dismissal."); *Ellett Bros., Inc. v. United States Fidelity & Guar. Co.,* 275 F.3d 384, 388 (4th Cir.2001) (holding that dismissal of a case pursuant to court order should not be denied absent "plain legal prejudice to the defendant"); *accord Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir.1987) (holding that the trial court "must focus primarily on protecting the interests of the defendant"); *see also, e.g., Langley v. DaimlerChrysler Corp.,* 407 F.Supp.2d 897, 904 (N.D.Ohio 2005) (reasoning that plain legal prejudice is required); *Manshack v. Southwestern Elec. Power Co.,* 915 F.2d 172, 174 (5th Cir.1990) ("[T]he courts have generally followed the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal

prejudice other than the mere prospect of a second lawsuit."); *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir.1986).

██ Although this Court previously has not decided precisely what "plain legal prejudice" entails, we find instructive the federal case law regarding FRCP 41.[14] Whether a plaintiff is entitled to voluntary dismissal without prejudice, i.e., the defendant would not suffer "plain legal prejudice" in the event of dismissal, is resolved traditionally by analysis according to the following four factors: (1) the non-moving party's effort and expense in preparing for litigation; (2) excessive delay or lack of diligence on the part of the moving party; (3) sufficiency of explanation of the need for a dismissal without prejudice; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment or other dispositive motion is pending. *Witzman v. Gross*, 148 F.3d 988, 991–92 (8th Cir. 1998) (citing *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir.1987)); *Gross v. Spies*, 133 F.3d 914, 1998 WL 8006, *5 (4th Cir.1998) (unpublished opinion); *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir.1997) citing *Phillips U.S.A., Inc. v. Allflex U.S.A., Inc.*, 77 F.3d 354, 358 (10th Cir.1996); *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473–74 (7th Cir.1988) (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)); *Langley*, 407 F.Supp.2d at 904–05 (N.D.Ohio 2005) (quoting *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir.1994)); *DirecTV v. Zink*, 337 F.Supp.2d 984, 987 (E.D.Mich.2004) (same); *Wilson v. Eli Lilly and Co.*, 222 F.R.D. 99, 100 (D.Md.2004) (quoting *Teck General P'ship v. Crown Central Petroleum Corp.*, 28 F.Supp.2d 989, 991 (E.D.Va.1998) (in turn quoting *Gross*, 133 F.3d 914, 1998 WL 8006, *5)). While some courts employ slightly different or augmented tests to determine whether a defendant would suffer clear legal prejudice if voluntary dismissal is granted,[15]

---

**14.** Several federal circuits, including the Fifth, Sixth, Seventh, Eighth, and Tenth, have defined "plain legal prejudice." The Fourth Circuit, although in an unreported opinion, additionally has weighed in with its conception of the phrase.

**15.** In *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir.1990), for example, the U.S. Court of Appeals for the Second Circuit employed

we believe that these four factors sufficiently weigh the equities in order to determine whether dismissal without prejudice is appropriate in a given case.

## B. The Circuit Court's Exercise of Discretion Here.

The trial judge considered, in his articulated thought processes, the four factors in reaching his determination to deny Respondents a voluntary dismissal without prejudice:

This Court notes in the context of this case that the initial complaint was filed in this case on April 14, 2003. There have been several, indeed, three amended scheduling orders, extending the time for certain deadlines. Including discovery, the filing of dispositive motions. And, critically, in the context of this case, to come forward with expert evidence demonstrating causation. The Court notes that scheduling orders are not guidelines. They're not suggestions. They are orders. And the Court endeavored to work with counsel to arrive at scheduling orders that were acceptable to all sides. In the context of this motion, in considering the various factors that the Court has stated, there has been significant effort and expense on all sides in preparing for trial. The vaccine defendants themselves, according to the information that has been provided, have deposed several witnesses. Indeed thirteen witnesses. And there have been many corporate designees produced, which I understand to be nineteen for their various depositions. In addition, defendants have consulted and retained experts, and had an independent medical examination done pursuant to the Maryland rule. So, clearly, notwithstanding plaintiffs' argument, that some of those efforts and expenses were cross designated in this and other cases throughout

---

five factors in determining whether a dismissal would result in legal prejudice to the defendants:

[1] the plaintiff's diligence in bringing the motion; [2] any "undue vexatiousness" on the plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

the country, there has been, in this Court's eyes, significant effort and expense in preparing for trial. In terms of the second factor, excessive delay or lack of diligence on the part of the movant. I will say, as all counsel have stated here, there has been no lack of diligence whatsoever on behalf of [local counsel] in the context of the plaintiffs' efforts in this case. There has been some discussion a s to other counsel. But, I believe it's necessary to address that in the context of this motion. The third motion, insufficient explanation of a need for dismissal. There has been the explanation for this dismissal. Whether or not it's sufficient or not, really is dependent on the facts of this case. And, the facts of this case demonstrate that the plaintiffs have conceded that Dr. Bradstreet is, indeed, the sole expert on specific causation. And, without that opinion, they are unable to prosecute their claims. In ordering a third amended scheduling order, last month this Court accepted the affidavit presented to it that Dr. Bradstreet would be able to render an expert opinion by the end of December, based on the affidavit that was presented to me. And, several days after that, Dr. Bradstreet was withdrawn as an expert in this case. Many could note, implicitly or explicitly, the effect of that. But that's the factual circumstances that this case is presented to this Court. There is no other expert noted by the plaintiffs who will replace Dr. Bradstreet's previously anticipated testimony, or that there would be any evidence available by any other expert at this point to go forward in connection with these proceedings. In addition, the Court notes that there are two pending motions for summary judgment. Indeed, a motion for summary judgment filed by the vaccine defendants on the same day that the motion for dismissal of all claims without prejudice was filed by the plaintiffs. There has, as well, been a previous motion for summary motion [sic] filed by Eli Lilly and Company, that the Court denied, at that time, for the sole purpose of allowing additional discovery to go forward before reconsidering that issue.

The Court does have to take into consideration in the facts of this case that there are minor plaintiffs involved. And the Court is most empathetic with that issue. Nevertheless, the Court distinguishes this case from a case such as *Berrain v. Katzen[,]* [331 Md. 693, 629 A.2d 707 (1993)], or *Fulton v. K & M Associates[,]* [331 Md. 712, 629 A.2d 716(1993)], relied upon by the plaintiffs, where there was either parental, or guardian neglect, or even perhaps the neglect of attorneys. That is not an issue in this case. In that context, the Court does not believe that a minor's motion for voluntary dismissal is, or should be analyzed any differently than any other voluntary dismissal motion. I have considered the cases relied upon by the vaccine defendants. Although admittedly, not all fours with this case, but a guidance to the Court in the context of determining whether good cause exist for the granting of a motion for voluntary dismissal with prejudice. And, under a review of all those factors, including the efforts that the Court has undertaken to allow sufficient time to present these issues to the Court, the Court finds, based on those factors that is would be inappropriate for this Court to grant a motion to dismiss a claim voluntarily without prejudice given the facts of this case. Critical to the Court is the extensive discovery that has been undertaken. The thirteen depositions. The corporate designees that have been noted. The time, effort and expense in briefing the preliminary motions, and gathering discovery, and presenting dispositive motions to the Court, that are relevant to the Court's consideration. As a result, under the fact specific circumstances of this case, this Court denies the plaintiffs' renewed motion for voluntary dismissal of all claims without prejudice for the reasons so stated.

 Although finding it "clear from the transcript of the [21 December 2004] hearing that the circuit court carefully considered each of the [four] factors ...," and in spite of the deferential standard of review to be accorded the trial court's decision, the Court of Special Appeals nonetheless held that the trial court abused its discretion in denying the motion to

dismiss the complaint, without prejudice. *Skevofilax,* 167 Md.App. at 22, 891 A.2d at 429. Specifically, the Court of Special Appeals held that the trial court "made the first factor, [Petitioners'] effort and expense, determinative of its decision when that factor (a) is not compelling under the facts of the instant case, and (b) was the only one that the court found weighed in [Petitioners'] favor." *Id.* We hold that, in addition to misinterpreting the Circuit Court's consideration of the four factors, the Court of Special Appeals failed to give the trial court's decision the deference it deserved.

1. *Effort and Expense of the Non–Moving Party in Preparing for Trial*

The trial court specifically found that significant time and money had been expended by both sides in this litigation. As indicated by Judge Berger, thirty-two total depositions had been taken as of the date of the grant of summary judgment. Of these, thirteen were specific to the Skevofilaxes' claims.[16] Other forms of discovery, including interrogatories, document production, and independent medical evaluations also were conducted in connection with the pending litigation. The Court of Special Appeals observed that some of the depositions were cross-referenced with other thimerosal cases pending elsewhere, and hypothecated that selected depositions pertaining solely to the Skevofilaxes' suit might be reused if their suit were re-filed, with little or no need to update them. *Skevofilax,* 167 Md.App. at 16, 891 A.2d at 426. It is equally likely, however, that many of the depositions would need to be updated significantly if Respondents filed anew. If Respondents were to re-file the lawsuit significantly later, following a dismissal without prejudice, but within applicable limitations periods, as Petitioners argued, some experts currently identified by the parties no longer may be available to testify. Of

---

**16.** The record indicates that thirteen depositions were of fact and expert witness pertaining specifically to Michael's symptoms. The remaining nineteen depositions were cross-referenced with other thimerosal cases pending nationally, and concerned generally the potential adverse effects of pediatric exposure to thimerosal.

additional possible consequence, Michael's condition may change significantly such that entirely new independent medical evaluations would be necessary.

The fact remains that the Skevofilaxes' litigation had been pending for nearly twenty months at the time the dispositive motions were filed. Even if some of the depositions could have been recycled in renewed litigation, significant effort and funds already had been expended in defending the causes of action. As Judge Berger noted, there had been significant discovery over and above the depositions, the parties had briefed significant preliminary motions, and had presented numerous dispositive motions before the trial court. That the intermediate appellate court reached a different conclusion on this factor based on the facts before the trial court does not render the Circuit Court's decision an abuse of discretion, as long as a reasonable person could have adopted the view of the trial court. *North v. North*, 102 Md.App. 1, 14, 648 A.2d 1025, 1031–32 (1994) ("[A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable."). Based on the record before the Circuit Court at the time of its decision, we are unwilling to hold that the trial judge abused his discretion in finding that the expense and effort exerted in preparing for litigation weighed in favor of denying Respondents' request for voluntary dismissal without prejudice.

### 2. Excess Delay or Lack of Diligence by Movant

Contrary to what the Court of Special Appeals suggests, the time and money expended by Petitioners in preparing their defense was not the only factor the trial court considered that weighed against dismissal without prejudice. As to the second factor, excessive delay or lack of diligence on the part of the movant, the intermediate appellate court held that "[t]he trial court specifically found that there was no lack of diligence on

the part of appellants." This interpretation of the Circuit Court's reasoning is not accurate entirely.

It is a well-established principle that " '[t]rial judges are presumed to know the law and to apply it properly.' " *State v. Chaney*, 375 Md. 168, 179, 825 A.2d 452, 458 (2003) (quoting *Ball v. State*, 347 Md. 156, 206, 699 A.2d 1170, 1194 (1997), *cert. denied*, 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998)); *see also Medical Mut. Liability Ins. Soc. of Md. v. Evans*, 330 Md. 1, 34, 622 A.2d 103, 119 (1993); *Wagner v. Wagner*, 109 Md.App. 1, 50, 674 A.2d 1, 25 (1996) ("[W]e presume judges to know the law and apply it, even in the absence of a verbal indication of having considered it."). It is equally well-settled that there is a "strong presumption that judges properly perform their duties," and that "trial judges are not obliged to spell out in words every thought and step of logic." *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993); *see also Kirsner v. Edelmann*, 65 Md.App. 185, 196 n. 9, 499 A.2d 1313, 1319 n. 9 (1985) ("[A] judge is presumed to know the law, and thus is not required to set out in intimate detail each and every step of his or her thought process."); *Zorich v. Zorich*, 63 Md.App. 710, 717, 493 A.2d 1096, 1099 (1985) ("Because trial judges are presumed to know the law, not every step in their thought process needs to be explicitly spelled out."); *Bangs v. Bangs*, 59 Md.App. 350, 370, 475 A.2d 1214, 1224 (1984) ("A chancellor is not required to articulate every step in his thought processes."). Thus, "[t]he trial judge need not articulate each item or piece of evidence she or he has considered in reaching a decision. . . . The fact that the court did not catalog each factor and all the evidence which related to each factor does not require reversal." *John O. v. Jane O.*, 90 Md.App. 406, 429, 601 A.2d 149, 160 (1992); *see also Cobrand v. Adventist Healthcare, Inc.*, 149 Md.App. 431, 445, 816 A.2d 117, 125 (2003) (holding that when a matter is reserved to the sound discretion of the trial court, "a trial judge's failure to state each and every consideration or factor in a particular applicable standard does not, absent more, constitute an abuse of discretion, so long as the record supports a reasonable conclusion that appropriate factors were

taken into account in the exercise of discretion.") (internal citations omitted).

The trial judge here found that there had been no lack of diligence on the part of Respondents' *local Maryland counsel,* in representing the Skevofilaxes. The Circuit Court continued, however, that "[t]here has been some discussion as to other counsel." While the trial court did not elaborate further as to "other counsel," it would be reasonable to infer from discussion and documents in this record that the court was referring to Respondents' national counsel in the thimerosal litigation. It is clear from the transcript that the trial court at least considered the possible delay or lack of diligence attributable to the movant and commented tactfully upon it. We hold, therefore, that the Court of Special Appeals misinterpreted the trial court's consideration of this second factor.

### 3. Sufficiency of Explanation for Need of Dismissal

The Court of Special Appeals additionally misinterpreted the Circuit Court's consideration of the third factor, the explanation of the need for dismissal. Judge Berger stated that "[t]here has been the explanation for this dismissal. Whether or not it's sufficient ... really is dependent on the facts of this case." The trial court then reiterated Respondents' explanation that Dr. Bradstreet was their sole expert on specific causation and that they would be unable to pursue the causes of action in the absence of his expert opinion. According to the Court of Special Appeals, however, had the trial court found Dr. Bradstreet's withdrawal pre-textual, it should have said so expressly. It therefore interpreted the trial court's articulation to mean that the Respondents' explanation was sufficient, and that it mitigated in favor of the requested dismissal without prejudice. *Skevofilax,* 167 Md.App. at 18, 891 A.2d at 426.

The Circuit Court indeed considered the factual background surrounding Dr. Bradstreet's withdrawal from the case. A careful review of the trial court's decision, however, reveals that the court neither expressly nor impliedly rendered an

opinion as to whether this explanation was sufficient to merit dismissal without prejudice. We simply cannot determine from the 21 December 2004 transcript, as the Court of Special Appeals purported to do, whether the trial court weighed this factor in favor of Petitioners or Respondents.

 Even if the trial court's comments were construed as a determination that Respondents' explanation was sufficient, we hold that it was not an abuse of discretion nevertheless to deny Respondents' motion. Each of the factors need not endorse a particular disposition in order to rule in a certain way. *Ohlander*, 114 F.3d at 1537 ("Each factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper.") (quoting *Phillips U.S.A., Inc.*, 77 F.3d at 358); *see also Kovalic*, 855 F.2d at 474 ("The enumeration of the factors to be considered . . . is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom discretion ultimately rests.") (quoting *Tyco Laboratories, Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir.1980)). That a party provides an adequate explanation for the need to dismiss without prejudice does not compel the trial judge to grant the motion.

### 4. Pending Motions for Summary Judgment

The fourth factor counsels a trial judge to consider the current pleading status of the litigation, i.e., whether there were any motions for summary judgment pending at the time the motion for dismissal without prejudice is filed. This factor is premised, at least in part, on the principle that a plaintiff confronting the potential for an adverse disposition of his, her, or its case may not dismiss unilaterally the case in order to file again in the future at a time when the conditions may be more favorable. *See, e.g., Phillips U.S.A., Inc.*, 77 F.3d at 358 ("[A] party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice."); *Grover*, 33 F.3d at 719 ("At the point when the law clearly

dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice."); *Pace,* 409 F.2d at 334 (affirming the denial of a motion to dismiss without prejudice on the ground that the plaintiffs were using the motion as a tactic to prevent summary judgment in favor of the defendants); *see also* MARYLAND RULES COMMENTARY 351 (explaining that the purpose of the present Maryland Rule 2–506 was to avoid a plaintiff's abuse of the right to unilateral voluntary dismissal at any time before the trial itself commenced).[17]

Judge Berger noted that

[i]ndeed, a motion for summary judgment filed by [Petitioners] on the same day that the motion for dismissal of all claims without prejudice was filed by the [Respondents]. There has, as well, been a previous motion for summary motion [sic] filed by Eli Lilly and Company, that the Court denied, at that time, for the sole purpose of allowing additional discovery to go forward before reconsidering that issue.

The Court of Special Appeals, however, held that the Respondents' motion for dismissal without prejudice was motivated solely by the withdrawal of Dr. Bradstreet, rather than an attempt to prevent an adverse disposition of the litigation by way of Petitioners' motions for summary judgment. *Skevofilax,* 167 Md.App. at 20, 891 A.2d at 427–28. The Court of Special Appeals reasoned that "[a]lthough the trial court did not make any determination as to whether this factor favored

---

**17.** Under former Maryland Rule 541, according to the commentators, plaintiffs often would use the Rule as a litigation tactic when the circumstances surrounding the trial were unfavorable for them. PAUL V. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 351 (2nd ed.1992). If a plaintiff w as dissatisfied with the jury venire or with the judge assigned to the case, for example, he or she unilaterally could dismiss the case and, shortly thereafter, recommence the action under *potentially more favorable conditions. Id.* Although this case clearly does not involve Respondents' dissatisfaction with the trial judge specially assigned to the case, a purpose of the new rule nonetheless remains to prevent abuse of voluntary dismissal as purely a litigation tactic.

[Respondents] or [Petitioners], the only conclusion supported by the record in this case is that this factor favors the granting of [Respondents'] motion to dismiss without prejudice." *Skevofilax*, 167 Md.App. at 20, 891 A.2d at 428. The intermediate appellate court misstates the Circuit Court's reasoning.

Petitioners' 1 December 2004 motion for summary judgment was filed the same day as Respondents' renewed motion for voluntary dismissal. It is not clear from the record, based on the time each motion was filed, whether a reasonable inference could be drawn either that Respondents' Rule 2–506(b) motion was in response to the Vaccine Defendants' motion for summary judgment, or simply the result of Dr. Bradstreet's withdrawal. We are inclined to agree with Petitioners, however, that it was not a race to file at that point. It is clear that Respondents legally were unable to maintain successfully their claims against Petitioners in the absence of an expert opinion on specific causation, nor did they have any basis to oppose summary judgment without such an expert. Counsel for Respondents quite properly conceded as much at the 21 December 2004 hearing before the trial court.

Even if the motion to dismiss without prejudice was not in direct response to the prospect of an adverse disposition of the case in favor of Petitioners, Respondents should have foreseen that, without an expert as to specific causation, Vaccine Defendants would seek summary judgment. According to Petitioners, they were ready to file their dispositive motions at the completion of Dr. Bradstreet's deposition *regardless* of the outcome of the awaited genomic susceptibility tests.[18] If

---

18. There was considerable discussion at the 21 December 2004 hearing as to the admissibility of Dr. Bradstreet's anticipated expert opinion. Critical to the formation of Dr. Bradstreet's expert medical opinions were certain test results regarding the minor plaintiff's susceptibility to the adverse effects of thimerosal toxins. Dr. Bradstreet stated in his deposition, ten days before the 21 December hearing, in another of the thimerosal cases pending elsewhere that there were no peer-reviewed scientific publications supporting a link between genetic polymorphisms and autism. Dr. Bradstreet conceded, furthermore, that a link between gene polymorphisms and autism was not accepted generally in

motions for summary judgment were not pending formally at the time of Respondents' Rule 2–506(b) motion, Respondents hardly could have been uncognizant of the likelihood that renewed motions for summary judgment would be forthcoming, following Dr. Bradstreet's withdrawal, considering especially that Petitioners had filed dispositive motions at virtually each earlier critical juncture of the litigation.

Of greatest significant to the Circuit Court, apparently, was Eli Lilly and Company's initial motion for summary judgment as to the fraud counts, although that motion was not renewed formally until 3 December 2004, 2 days after Respondents' renewed motion for voluntary dismissal was filed. The initial motion was denied in May 2004 expressly in order to allow the parties to conduct discovery. Considering that the time for designating experts had passed, and that the bulk of fact

---

the medical community. The Texas federal court in *Easter* (*see* fn. 10, *supra* ) declared Dr. Bradstreet's proffered testimony to such effect scientifically unreliable and inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993). *Easter v. Aventis Pasteur, Inc.,* 358 F.Supp.2d 574, 576–79 (E.D.Tex.2005).

Dr. Bradstreet's similar testimony in Maryland would face an equally daunting hurdle. Although the standard for admissibility of expert opinions based on novel scientific principles, established in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), was displaced on the federal level by the Federal Rules of Evidence, *Daubert,* 509 U.S. at 588, 113 S.Ct. at 2794, Maryland specifically adopted the *Frye* standard in *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978). The *Frye–Reed* standard continues to be the standard by which Maryland trial courts determine the admissibility of novel scientific evidence. *Schultz v. State,* 106 Md.App. 145, 153 n. 3, 664 A.2d 60, 64 n. 3 (1995) (interpreting the Committee note to Md. Rule 5–702, the Maryland Rule which governs generally the admissibility of expert testimony). Under the *Reed–Frye* standard, novel scientific evidence cannot be used as the basis for an expert opinion unless "the bases of that opinion [is] shown to be generally accepted as reliable within the expert's particular scientific field." *Reed,* 283 Md. at 381, 391 A.2d at 368. After conceding at his deposition, taken in connection with the *Easter* case, that no peer-reviewed scientific publications had drawn the connection between a GST–M1 polymorphism and autism, Dr. Bradstreet was asked expressly: "Do you agree with me that it is not generally accepted in the medical community that the GST–M1 ['null'][genotype] is associated with autism?" Dr. Bradstreet replied: "I think that's easy to say. Yes."

discovery had been conducted, it likely was apparent to Respondents that Eli Lilly's motion for summary judgment would be renewed subsequent to Dr. Bradstreet's withdrawal. A reasonable trial judge, given the status of the pending litigation at the time of the relevant hearing, could conclude that the fourth factor weighed in favor of Petitioners.

### 5. Additional Considerations In This Case

A primary thrust of the Court of Special Appeals's opinion was that "[t]he particular circumstances of the case *sub judice* present an additional factor that the trial court must consider in deciding a motion to dismiss without prejudice under Maryland Rule 2–506(b)—Michael's status as a minor." *Skevofilax*, 167 Md.App. at 20, 891 A.2d at 428. Federal courts interpreting FRCP 41(a)(2) have held that a trial court should consider the equities not only facing the non-moving party, but also those equities in favor of the movant. *Ohlander*, 114 F.3d at 1537; *see also* WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2364. Additionally, the four factors previously addressed are not exclusive, and any other relevant factors should be considered. *Ohlander*, 114 F.3d at 1537 (citing *Phillips U.S.A., Inc.*, 77 F.3d at 358 (10th Cir.1996)).

The intermediate appellate court observed that Maryland courts traditionally have been solicitous of the legal rights of minors when a "next friend" or guardian sues on their behalf for personal injuries or other similar causes of action. In affixing this "special duty" to protect the interests of minors in litigation, the two lower courts here looked primarily to two cases where this Court reversed trial court decisions denying plaintiffs' motions for voluntary dismissal without prejudice where the minor plaintiffs' next friends failed to pursue diligently the claims: *Fulton v. K & M Associates*, 331 Md. 712, 629 A.2d 716 (1993) and *Berrain v. Katzen*, 331 Md. 693, 629 A.2d 707 (1993).[19] According to the Court of Special Appeals,

---

**19.** *See also, e.g., Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508 (2002) (holding unconstitutional in a medical malpractice suit a

the trial court "failed to give any consideration to the additional factor 'unique to the context of the [the] case.'" *Skevofilax*, 167 Md.App. at 23, 891 A.2d at 429 (quoting *Ohlander*, 114 F.3d at 1537). This failure, furthermore, was found to constitute an abuse of discretion because the trial court failed to "exercise its discretion in accordance with correct legal standards." *Skevofilax*, 167 Md.App. at 23, 891 A.2d at 429.

■ We concede that, where the record so reveals, a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion. *Ehrlich v. Perez*, 394 Md. 691, 708, 908 A.2d 1220, 1230 (2006) (" '[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards.'") (quoting *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 301, 849 A.2d 451, 459 (2004)); *Alston v. Alston*, 331 Md. 496, 504, 629 A.2d 70, 74 (1993); *see also Ohlander*, 114 F.3d at 1537 ("A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of is discretionary judgment is based."); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 680 (10th Cir.1989). Because this Court concludes that the cases relied on by Respondents and the Court of Special Appeals do not compel here the grant of dismissal without prejudice, we determine that the Circuit Court properly considered the legal standards regarding protection of the legal rights of minors.

The issue in *Fulton v. K & M Associates* was whether a circuit court abused its discretion in denying a minor plaintiff's motion to dismiss without prejudice when the plaintiff lacked necessary medical evidence due to a lack of cooperation on the part of the next friend in taking the minor plaintiff to be tested. 331 Md. at 713, 714, 629 A.2d at 717. In a complaint, filed through his next friend and mother, against several property owners, the minor plaintiff alleged that he suffered

statute of limitations which provided that the limitations period began to run before the minor attained the age of majority).

chronic lead poisoning during infancy after ingesting deteriorated lead paint in various rental dwellings in Baltimore City. *Fulton,* 331 Md. at 714, 629 A.2d at 717. According to plaintiff's counsel, testing was necessary for medical experts to conclude whether exposure to lead was the cause of plaintiff's permanent brain injury. *Id.* Because the plaintiff's next friend did not cooperate with efforts to conduct medical tests on the minor, medical evidence to support their claims could not be developed. *Id.* His counsel, therefore, pursued voluntary dismissal without prejudice, under Maryland Rule 2–506(b), in order to preserve the minor's cause of action. The trial court denied plaintiff's motion. Plaintiff filed a timely appeal with the Court of Special Appeals. Before the intermediate appellate court considered the case, we issued a writ of certiorari on our initiative. 329 Md. 479, 620 A.2d 349 (1993).

In reversing the trial court's decision, we held that "the trial court owes a duty to infants represented by a next friend, to insure that the next friend does not prejudice the rights and interests of the minor though conflict of interest, fraud, or neglect." *Fulton,* 331 Md. at 715, 629 A.2d at 719. We concluded that "[i]n light of the apparent neglect of the next friend in prosecuting the claim of the infant plaintiff the trial court should have intervened on behalf of the minor and permitted dismissal of the claim without prejudice." *Id.*

In *Berrain v. Katzen,*[20] the issue was whether it was an abuse of discretion for the trial court to enter default judgment against a minor plaintiff when the next friend and mother failed to comply with the defendants' reasonable requests for discovery. In *Berrain,* three siblings suffered permanent brain damage after allegedly ingesting lead paint flakes or chips while living with their mother in dwellings owned by the defendants. 331 Md. at 695, 629 A.2d at 707. Defense counsel propounded interrogatories to the plaintiffs on 2 December 1991. *Berrain,* 331 Md. at 696, 629 A.2d at

---

**20.** *Berrain* and *Fulton* were decided on the same day.

708. After waiting seven months for a response, the defendants moved for sanctions pursuant to Maryland Rule 2–432(a), which caused the circuit court to grant a default order. *Berrain,* 331 Md. at 696–97, 629 A.2d at 708. The plaintiffs noted an appeal to the intermediate appellate court, and we again issued a writ of certiorari on our initiative. 329 Md. 337, 619 A.2d 547 (1993).

After exploring the roots of the next friend's functions in ancient English statutory and common law, we reversed the trial court's judgment, holding that it was an abuse of discretion to enter default judgment in favor of the defendants. We held that "the trial court has a special duty to protect the rights and interests of the minor plaintiff who is represented by [a] next friend to insure that the next friend does not prejudice those rights and interests through conflict of interest, fraud, or, in this case, neglect." *Berrain,* 331 Md. at 706, 629 A.2d at 715–16.

We find nothing in *Fulton* or *Berrain* to support reversal of the Circuit Court's decision here. There was no conflict of interest, fraud, or neglect on the part of minor's next friend. Judge Berger, in rendering his opinion from the bench, clearly took into consideration Michael Skevofilax's minority status.[21] Also clear from the trial judge's oral opinion is that, outside of some delaying tactics employed by national counsel alluded to briefly by the trial court, there was no neglect on the part of either Michael's next friend or his attorneys. Judge Berger specifically held that "I will say, as

---

21. The circuit court, in pertinent part, held:

The Court does have to take into consideration in the facts of this case that there are minor plaintiffs involved. And the Court is most empathetic with that issue. Nevertheless, the Court distinguishes this case from a case such as *Berrain v. Katzen[,]* [331 Md. 693, 629 A.2d 707 (1993)], or *Fulton v. K & M Associates[,]* [331 Md. 712, 629 A.2d 716(1993)], relied upon by the plaintiffs, where there was either parental, or guardian neglect, or even perhaps the neglect of attorneys. That is not an issue in this case. In that context, the Court does not believe that a minor's motion for voluntary dismissal is, or should be analyzed any differently than any other voluntary dismissal motion.

all counsel have stated here, there has been no lack of diligence whatsoever on behalf of [plaintiffs' counsel] in the context of plaintiffs' efforts in this case." Nor is there any evidence that either counsel or the next friends engaged in the conflicts of interest or fraud against which we cautioned in *Fulton* and *Berrain*. We find that, absent conflict of interest, fraud, or neglect by a parent, guardian, next friend, or the minor's attorney, a motion for voluntary dismissal made on behalf of a minor should not be analyzed differently than a motion for dismissal without prejudice filed by any plaintiff. In the circumstances of the present case, it was not an abuse of discretion for the Circuit Court to treat the Rule 2–506(b) motion as it would any other motion for voluntary dismissal without prejudice.

### C. Analysis of the Circuit Court's Exercise of Discretion.

*1. The Circuit Court Considered the Proper Legal Standard*

The "abuse of discretion" standard of review is premised, at least in part, on the concept that matters within the discretion of the trial court are "much better decided by the trial judges than by appellate courts. . . ." *Wilson,* 385 Md. at 198–99, 867 A.2d at 1084; *In re Adoption/Guardianship No. 3598,* 347 Md. at 312–13, 701 A.2d at 118–19; *Northwestern Nat'l Ins. Co. v. Samuel R. Rosoff, Ltd.,* 195 Md. 421, 436, 73 A.2d 461, 467 (1950). So long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court's discretion merely because the appellate court reaches a different conclusion. *See North,* 102 Md.App. at 14, 648 A.2d at 1031–32; *Northwestern Nat'l Ins. Co.,* 195 Md. at 436, 73 A.2d at 467; *see also Kern v. TXO Production Corp.,* 738 F.2d 968, 971 (8th Cir. 1984) ("The very concept of discretion presupposes a zone of choice within which the trial court may go either way [in granting or denying a motion for voluntary dismissal]."); *Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1337 (11th

Cir.2005) ("Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.") (quoting *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324 (11th Cir.2005)).

The Court of Special Appeals's reversal of the trial court's refusal to dismiss without prejudice was based primarily on two incorrect positions: (1) that Judge Berger found only one factor weighing against dismissal without prejudice, yet nevertheless denied Respondents' motion; and (2) that Michael Skevofilax's minority status compelled dismissal without prejudice. It is clear from the transcript of the 21 December 2004 hearing that the trial judge considered all the relevant factors, including Michael's minority status. The Court of Special Appeals even acknowledged that Judge Berger carefully considered all the proper factors for a determination of whether voluntary dismissal was appropriate. He referred to the relevant factors, and gave a statement of reasons for denying the motion. *Compare with Conafay*, 793 F.2d at 352–53 ("In the specific factual and legal setting, ..., we find ourselves unable to resolve [whether the trial court acted properly within its discretion in denying the motion dismiss without prejudice] without the benefit of a statement of the reasons by the [trial court] for its decision denying the motion."). He did not abuse his discretion in this regard.

2. *Other Trial Courts Similarly Have Refused to Dismiss Without Prejudice*

Several courts interpreting FRCP 41(a)(2) or its state analogues, including the U.S. District Court for the District of Maryland, have denied motions for voluntary dismissal in circumstances not substantially different from the present situation. For example, in *Hartford Accident & Indemnity Co. v. Costa Lines Cargo Services, Inc.*, 903 F.2d 352, 361 (5th Cir.1990), the U.S. Court of Appeals for the Fifth Circuit held that it was not an abuse of discretion for the district court to deny a voluntary dismissal without prejudice when the case had been removed to federal court for nearly ten months, the

court had convened on several occasions to resolve various disputes regarding the litigation, extensive discovery had been conducted, summary judgment had been entered in favor of one defendant, and trial had already been set for the remaining defendants. In *Andes*, 788 F.2d at 1036–37, the Fourth Circuit held that the U.S. District Court for the District of Maryland had not abused its discretion in refusing to dismiss, without prejudice, a lawsuit where the defendant incurred significant expense in responding to the complaint, filing motions for summary judgment and supporting memoranda, deposing witnesses, producing documents, and obtaining expert opinions pertinent to the case.[22]

We find particularly persuasive the Superior Court of Pennsylvania's decision in *Gray v. Magee*, 864 A.2d 560 (Pa.Super 2004). In that case, a minor, through his parents and next friends, filed a complaint on 21 December 1998 alleging medical malpractice. Prior to filing the complaint, Eli Wayne, M.D., was retained by the plaintiffs in order to give expert testimony in support of the claims. Dr. Wayne died during the pendency of the litigation. *Gray*, 864 A.2d at 562. The case remained inactive on the docket until the trial court conducted a pre-trial conference on 20 August 2003, at which time the court set 11 December 2003 as the deadline for the

---

**22.** In *Andes v. Versant Corp.*, the Fourth Circuit ultimately reversed the trial court's grant of dismissal *with* prejudice in favor of the defendant. In that case, the trial judge entered an order granting dismissal, *with* prejudice, the same day that the defendants filed their response to the plaintiff's motion to dismiss without prejudice. Contained in the response was a request that the court dismiss the case with prejudice. According to the Fourth Circuit, it was uncertain whether the district court considered the defendant's opposition in dismissing with prejudice. *Andes*, 788 F.2d at 1036. It was clear to the reviewing court, however, that the district court entered the order without giving the plaintiff an opportunity to respond to the defendant's request for dismissal with prejudice. *Id.*

Because it is clear on the record that all parties had ample opportunity to be heard on the issues before Judge Berger, the circumstances of *Andes* relating to the dismissal with prejudice are distinguishable from the present case. The portion of *Andes* holding that it was not an abuse of discretion to deny the dismissal *without* prejudice, however, remains pertinent our analysis.

plaintiffs' filing of expert reports. Approximately 3 months after the scheduling conference, plaintiffs requested an extension, explaining that their expert, "Dr. Wayne[,] had passed away after filing his expert report and that their new expert (who was not named in the request) had not yet had time to file his expert report." *Id.* The trial court granted the plaintiffs' request, and extended expert discovery to 11 January 2004. In early January 2004, the plaintiffs had not identified yet their replacement expert, and requested another extension. *Id.* Even though the trial court granted this request, the plaintiffs were unable to comply with the amended scheduling order. On 11 February 2004, plaintiffs filed a petition for voluntary discontinuance (the Pennsylvania analogue to voluntary dismissal without prejudice), and the defendants responded with a motion for summary judgment. *Gray,* 864 A.2d at 563. The trial court "granted summary judgment in favor of [the defendant] and dismissed the case with prejudice due to [the plaintiffs'] failure to produce an expert report after being granted two 30–day extensions of time to produce the expert report." *Id.*

On appeal, the Superior Court, Pennsylvania's intermediate appellate court, commented first upon the underlying plaintiff's minority status. Specifically, the court held that any trial court must consider the interests of the minor in additional to the "unreasonable inconvenience, vexation, harassment, expense, or prejudice" suffered by the defendants in the event of voluntary discontinuance. *Gray,* 864 A.2d at 565; *see also Fancsali v. Univ. Health Ctr. of Pittsburgh,* 563 Pa. 439, 761 A.2d 1159, 1163 (2000) ("[I]t is clear that in deciding whether to allow the discontinuance of an action involving a minor, the court must give some consideration to the interests of the minor in considering unreasonable inconvenience, vexation, harassment, expense and prejudice."). Despite the minority status of the injured plaintiff, the Superior Court nevertheless held that the trial judge had not abused its discretion by granting the defendants' motion for summary judgment in lieu of plaintiffs' petition for voluntary continuance. The court reasoned that

after numerous attempts to procure an expert witness and the trial court's repeated extensions of the discovery period, [plaintiffs] have failed to procure an expert witness to testify regarding their theory of liability in this case. Accordingly, [plaintiffs] have already experienced unreasonable convenience and expense in having to retain counsel and undertake discovery to defend themselves in a cause of action for which [plaintiffs] could not provide evidentiary support during the previous five years.

*Gray,* 864 A.2d at 565.

Although not directly on point with the present case, *Gray, Hartford Accident & Indemnity Co.*, and *Andes* underscore that we should not upset the circuit court's ruling here because a reasonable trial judge could have adopted the view that dismissal without prejudice was inappropriate. Similar to the circumstances in *Gray,* it is clear from this record that the trial court endeavored to accommodate Respondents while they attempted to formulate medical evidence to support their claims. In denying Respondents' Rule 2–506(b) motion, the trial court expressly commented upon the three extensions granted, at Respondents' request, in order to allow them to develop Dr. Bradstreet's expert testimony. The Circuit Court's decision to deny Respondents' motion was not so "clearly against logic" or "beyond the fringe of what the courts deem minimally acceptable" that it constituted an abuse of discretion. *Wilson,* 385 Md. at 198–99, 867 A.2d at 1084.

### III. Petitioner's Motion for Summary Judgment

Because a trial court decides questions of law when considering a motion for summary judgment, this Court reviews a trial court's grant of summary judgment *de novo* in order to determine whether the trial court was legally correct. *Walk v. Hartford Cas.*, 382 Md. 1, 14, 852 A.2d 98, 105 (2004); *Todd v. Mass Transit Admin.*, 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 533, 836 A.2d 655, 669 (2003); *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84, 87–88 (1993). Appellate review, therefore, is confined to the legal grounds relied upon by the

trial court in granting summary judgment. *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001) (quoting *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001)); *Sadler,* 378 Md. at 536, 836 A.2d at 671; *Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 764, 556 A.2d 1135, 1137 (1989) ("[O]rdinarily we will not affirm the granting of summary judgment for a reason not relied upon by the trial judge."); *see also Warner v. German,* 100 Md.App. 512, 642 A.2d 239, 242 (1994).

A trial court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). In reviewing a grant of summary judgment under Rule 2–501(f), we independently review the record in the light most favorable to the non-moving party and construe against the movant any reasonable inferences which may be drawn from the facts. *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners,* 380 Md. 106, 114, 843 A.2d 865, 869 (2004).

 It is clear in the present case that a medical expert on specific causation was necessary in order to substantiate Respondents' causes of action. In *Wilhelm v. State Traffic Safety Comm'n,* 230 Md. 91, 185 A.2d 715 (1962), we held that

[t]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. . . . However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (espe-

cially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act), proof of the cause must be made by such witnesses.

230 Md. at 99–100, 185 A.2d at 719 (internal citations omitted). In the present case, the suit would require the trial court to determine whether vaccines administered to eight-year-old Michael Skevofilax as an infant caused his autism. For such a complex medical question, a medical expert would be necessary to prove specific causation within a reasonable degree of scientific certainty.

The Circuit Court explained from the bench its decision to grant summary judgment in favor of Petitioners:

Causation can not be demonstrated in this case on the record that is presently before the Court. In that context, proximate causation is a legal question, where the facts are either agreed upon or not in dispute. Without any expert testimony on the issue of specific causation, the Court must grant the vaccine defendant's motion for summary judgment as a matter of law.

Indeed, Respondents conceded at the 21 December 2004 hearing that they could not succeed with their claims in the absence of an expert opinion pertaining to specific causation. Nor were Respondents able to argue that the case was not ripe for summary judgment. Respondents' counsel instead argued that voluntary dismissal without prejudice was more appropriate in light of Dr. Bradstreet's withdrawal.[23]

---

**23.** Specifically, Respondents' counsel stated at the 21 December 2004 hearing that

Plaintiffs do not have evidence of specific causation. Because of the withdraw of the sole expert for the Plaintiffs on specific causation. That's Dr. Bradstreet, Plaintiffs do not have the basis to oppose summary judgment. Now, we made that clear in our pleadings. And, quite frankly, Your Honor, that's why I mentioned a few minutes ago, my response to their summary judgment motion is very succinct. And, it is, what it is. The Defendants have gone to some length citing cases about the elements of the cause of action and all that sort of thing. We don't dispute that. The Plaintiffs' position today in the papers simply is, not that summary judgment is not available to this

The trial court was correct in his legal conclusion that summary judgment was appropriate under the circumstances. Despite three amended scheduling orders, and approximately 11 months allotted to conduct discovery, Respondents failed to produce an expert who could testify to specific causation within a reasonable degree of scientific certainty. Without such an expert, Respondents' claims must fail as a matter of law.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**

Court in the Court's discretion. But that a voluntary dismissal without prejudice is more appropriate under all of the particular and peculiar circumstances of this litigation as it stands right now.